KENNEBEC & PORTLAND RAIL ROAD COMPANY *versus* JARVIS.

The right of holding shares is a sufficient consideration for a promise to the
corporation to take such shares and pay for them.

When the amount of stock, which a corporation may hold, is *not fixed in
its charter;* and the corporation has voted what the amount should be,
it is not requisite, (in order to a valid assessment upon the shares of a
member,) that the whole of that amount should have been subscribed for,
although his subscription was made after the vote was passed.

Upon a subscription, promising a corporation to take and pay for shares in
its stock, assumpsit may be maintained, although the corporation has not
exercised its chartered authority to sell the shares for the delinquency of
payment.

ON REPORT from *Nisi Prius,* WELLS J. presiding.

ASSUMPSIT, to recover assessments upon two shares in the
stock of the company. The defendant, with many others,
had signed the following paper, and set the word " two"
against his name. — "We, the subscribers hereto, agree and
promise to take the No. of shares set to our names respective-
ly in the Kennebec and Portland Rail Road Company, which
shares are to be each of the value of $100, and to be paid for
at that rate, at such times, to such persons and in such install-
ments, as shall be hereafter required by a vote of said compa-
ny. — Gardiner, Jan. 5, 1847."

The Act of incorporation was passed in 1836, and the com-
pany was organized in 1846. One of the by-laws authorized
the Directors, from time to time, to make such reasonable assess-
ments on all the shares, as they might deem necessary, and to
direct the same to be paid to the *Treasurer,* at such time and
place as *they* might think proper.

The same by-law also authorized the shares of any delin-
quent subscriber to be sold for payment of his subscription,
holding him liable for the balance, if the sale should not pro-
duce the price of the shares. " On Jan. 21, 1847, it was vot-
ed by the directors that the capital stock shall be called in in
20 assessments of $5 each."

On the same day the directors ordered that the first assess-
ment of $5 be payable May 1, 1847. The other assessments
were made payable at many successive pay-days.

The defence was placed upon the following grounds : —

1. That there was no consideration for the promise.

2. That the promise was made upon a condition that the whole number of shares, constituting the capital stock, should be subscribed for.

As applicable to this branch of the defence, it is to be observed that the charter, § 4, enacted that the capital stock " may" consist of $1,200,000, and shall be divided into shares of $200 each. An amendatory Act of July, 1846, required the capital to be divided into shares of $100.

The 13th by-law was, that " the capital stock shall consist of 12,000 shares of $100 each, and the number thereof may be increased, from time to time, as the directors shall determine, and the Legislature authorize ; *provided* they do not exceed 20,000."

The shares subscribed for were never so many as 12,000, wherefore the defendant contended, that the assessments, being made upon less than the whole number of required shares, were unauthorized and void. He also suggested that, because the whole stock had not been subscribed, the charter was vacated. Upon this second point in defence, he cited *Salem Mill Dam Co.* v. *Ropes,* 6 Pick. 23 ; *Central Turnpike Co.* v. *Valentine,* 10 Pick. 142.

3. That the payment had not been required as provided for in the contract, (of which the charter and by-laws are to be considered a part,) inasmuch as the assessments were not made payable at the time and place and to the person, provided for in the by-laws.

It is here to be noticed, that the by-law authorized the directors to make assessments, and to direct them to be paid to the treasurer, at such time and place, as they shall deem proper.

The assessment in question was made, by the directors, not by virtue of a specific vote of the stockholders, under the provision of the by-law, and *they* ordered the time for its payment, and that it should be paid at the Bank.

4. That the defendant, if liable to the suit, is liable only for the balance remaining due after a sale of his shares. *Portland, S. & P. R. Road* v. *Graham*, 11 Metc. 1 ; 2 Johns. 109.

5. That no certificate of stock had been issued to the defendants.

The case was submitted to the Court, with power to draw such inferences as a jury might.

The opinion of the Court, SHEPLEY, C. J., TENNEY, HOWARD and APPLETON, J. J., was drawn up by

SHEPLEY, C. J. — The defendant subscribed his name to a paper, by which he promised to take two shares in the company, of one hundred dollars each, to be paid for at such times, to such persons, and in such installments, as should be required by the company. It has already been decided, that a promise to pay for shares in a corporation is binding upon the promiser.

Several objections to the maintenance of this suit have been presented by an argument for the defendant.

The first is, that there was no consideration for the promise.

When a subscription is made to the stock of a corporation by its authority, or when it accepts such a subscription, it becomes liable to be called upon to perform on its part, whatever its charter and by-laws require for the benefit of the holder of its stock. The testimony is sufficient to authorize the Court to infer, that the subscriptions made to its stock by the defendant and others were accepted.

The right acquired by the defendant to become the owner of two shares and to be entitled to the privileges of a stockholder was a sufficient consideration for his promise to pay for them.

2. The substance of the second is, that the promise was made upon condition, that the whole capital should be raised by a subscription for all the shares; and that there has been no performance of it on the part of the corporation.

The case of the *Salem Mill Dam Co.* v. *Ropes*, 6 Pick. 23, is relied upon as a decisive authority for this position.

The charter and contract presented in that case, will be found upon examination, to differ essentially from the charter and contract exhibited by this case.

In that case, the capital stock was considered to be certainly and absolutely determined by the charter, by an enactment prescribing the number and the amount of shares, so that it could not be enlarged or diminished by the corporation.

In this case the capital is not determined by the charter. The fourth section provides, that the capital stock " may consist of one million two hundred thousand dollars, and shall be divided into shares of two hundred dollars."

The number of shares is not determined ; and the language used respecting the amount of the capital, confers the privilege to have such an amount of capital. It does not require that it should have it.

The contract subscribed, as presented in that case, not only had reference to a certain number of shares as composing the capital stock, a definite proportion of which was to be taken by the subscriber, but the language of the contract obliged him " to take the number of shares of the capital stock," " and to pay all such legal assessments on each of said shares."

The contract in this case could not have had reference to any certain number of shares or certain amount of capital as fixed by the charter, and there is no language used in the contract prescribing the number of the shares or the amount of the capital. The promise is not to pay all " legal assessments." It is to pay for the shares as he should be required by a vote of the company, without any reference to assessments or payments to be made on other shares.

The decision in the case cited, appears to have been made upon the ground, that the promise was to take a proportion of the capital stock as fixed by the charter. That it was therefore a conditional promise, to be performed only in case the corporation should have such a capital.

In this case the defendant cannot for such a cause be relieved. There being no certain number of shares or amount

of capital fixed by the charter, the promise could not have been conditional, that the corporation should have a fixed amount of capital or a certain number of shares.

Before the defendant made the promise, the by-laws of the corporation had been adopted.

The thirteenth provided, that "the capital stock of the company shall consist of twelve thousand shares of $100 each; and the number thereof may be increased from time to time as the directors shall determine and the Legislature authorize, provided they do not exceed 20,000 shares."

The by-laws might be altered at any annual meeting, or at a special meeting called for that purpose. The subscribers for stock must have known, when their subscriptions were made, that the amount of capital then provided for, was subject to enlargement or diminution by a vote of the corporation. The contract of a subscriber to the stock cannot, therefore, be considered as made upon condition, that the corporation should have a certain number of shares or a fixed capital. Such a construction would deprive the corporation of the power to alter that by-law without a violation of its contracts with the stockholders. This could not have been the intention of the parties. The agreement provided for payment of the amount of the shares without any reference to a fixed capital, or to any number of shares, or to any assessment to be made on other shares.

This objection cannot therefore prevail.

3. The third in substance is, that payment for the shares has not been required in the manner provided for by the contract, charter and by-laws.

The contract provided, that payment should be made " as shall hereafter be required by a vote of the company."

The assessments were not made by a vote of the company, but by the president and directors, who were authorized by the sixteenth by-law to make them.

Whatever is done by the agents of a corporation, duly authorized by its by-laws, must be considered as done by the corporation. The sixteenth by-law provides, that the presi-

dent and directors may make assessments " and may direct the same to be paid to the treasurer at such time and place as they shall deem proper.

No place of payment was designated by a vote of the directors. The by-law *authorized,* but did not *require* them to appoint a place for payment.

The contract provided for payment to such person as should be required by the company.

The designation of the treasurer of the corporation by the ninth by-law as the person to collect and receive all assessments was a sufficient designation of the person, to whom payment was to be made.

The place of payment would be determined in the absence of any other appointment, by the same by-law providing, that the treasurer should have an office at such place as the directors should determine accessible to all persons having business with the corporation.

The notices required were given, and certain banks were designated by the treasurer as places of payment for the convenience of the subscribers to the stock.

These were agents by his own appointment, and by their appointment no contract between the corporation and the proprietors of its stock appears to have been violated.

4. The fourth is, if the defendant be liable to pay, he can be liable only for a balance remaining due after a sale of his shares.

The contract does not provide for a sale of the shares. The sixteenth by-law authorizes the directors to order a sale of them, in case of neglect or refusal to pay assessments. It does not require them to make such an order.

The case of the *Portland, Saco & Portsmouth R. R. Co.* v. *Graham,* 11 Metc. 1, does not determine, that an action cannot be maintained to recover the amount agreed to be paid by the terms of a subscription, without proof that the shares have been sold. That case decided, that an action could not be maintained for that purpose, after a sale and transfer of the shares to another person.

The promise in this case not having been made upon any condition expressed, or to be inferred from any provision contained in the charter or by-laws, that payment should be made only after a sale of the shares, is obligatory upon the defendant, who must be holden for the payment according to the terms of his contract.

5. The fifth is, that the defendant was by the by-laws entitled to certificates for his shares, which have not been issued.

The issuing of such certificates is not made a prerequisite to a recovery. It does not appear to have been intended, that the payment of assessments and the issuing of certificates should be simultaneous or dependent acts ; for the form of a certificate provides, that the shares shall be subject to all assessments.

There is no proof that the defendant made a demand of certificates, and that they were refused.

*Defendant defaulted.*

*Evans*, for the plaintiffs.

*Morrell*, for the defendant.