## EVARTS & SCRANTON *vs.* PALMER.

Where T., the holder of a note made by G., assigned the same to E., and received as a consideration for the transfer, a note made by E. of the same date and amount and payable at the same time, without any understanding that his right to enforce the payment of E.'s note should depend on a recovery upon the note so assigned; *Held* that this amounted to an exchange of notes; that E. became the beneficial as well as the nominal owner of the note assigned to him by T.; and that in an action brought thereon by E., T. was not the " person for whose immediate benefit the suit was prosecuted," within the meaning of the 352d section of the code of 1848; so as to exclude him from being a witness.

If a person has no interest in the event of the suit, the fact that he had assigned to the plaintiff the note on which the suit is brought, even though such assignment was made for the purpose of making himself a witness, does not affect his competency.

MOTION for a new trial.  The action was assumpsit, brought to recover the amount of a promissory note made by C. N. Griffin, on the 27th of October, 1840 for $2,000, payable three months after date to the defendant Palmer or order, and indorsed by him.  The cause was tried at the Oneida circuit in October, 1848, before Justice Shankland.  On the trial the signatures of the maker and of the defendant as indorser were admitted by the defendant's counsel.  It was also admitted that the note was duly protested for non-payment, and notice given to the defendant; and that the sum due upon the note was $1937,72. The plaintiff then rested.  The counsel for the defendant then called as a witness C. N. Griffin, and proved by him that the note was indorsed by the defendant for his accommodation. That he sold the note to Jesse Thompson, on the 4th of November, 1840, for $1900, to be paid in the course of a few days. That Thompson, on that day, let him have $460 towards it, on the 10th of November, $540, and on the 12th of December, $250; and that he failed in business shortly after, and never received any further sum upon the note, from Thompson. The defendant having rested, the plaintiff called Jesse Thompson as a witness, who, upon his preliminary examination by the

Evarts *v.* Palmer.

defendant's counsel, testified that he sold the note in question to William Evarts, one of the plaintiffs; that the recovery in this suit would result in his benefit; that he held the note of Evarts alone, for this note, and the money would belong to him, Evarts; that he got his note before this note was sued the first time; that there was no understanding that he was not to pay the witness unless he recovered on the note in question. The witness thought he should not collect the note of Evarts, unless the latter recovered upon this, as he was not now able to pay; that witness did not expect Evarts would pay his note if the note in question was not collected, because he was not able; that he should understand that when Everts got this money he would pay the witness, not otherwise; that this suit was substantially under the witness' control; that Evarts directed him to collect the note, as his agent; that he sold the note to Evarts because he supposed it would be necessary for him to be a witness in a suit upon it; that Evarts' note was payable at the same time the note in question is, and was dated in Jan. 1841. The defendant's counsel objected to the witness testifying in the cause, on the ground that the action was prosecuted for the immediate benefit of Thompson; and also because he assigned the note prosecuted, for the purpose of making himself a witness. The judge sustained the objection, and excluded the evidence, and the plaintiffs' counsel excepted. The plaintiffs' counsel then offered in evidence a release executed by the plaintiffs to the witness Thompson, also a release executed to the plaintiffs by Thompson; but the judge decided that the latter was still an incompetent witness, and excluded his testimony. Irene Thompson, the wife of Jesse Thompson, was then offered as a witness, and objected to, on the ground of interest, and her testimony was also excluded. The court charged the jury that the proofs showed the note was usurious, and that therefore they should find for the defendant. And they accordingly found a verdict for the defendant; who, upon a bill of exceptions, moved for a new trial.

*J. Benedict,* for the plaintiffs

*F. Kernan,* for the defendant.

*By the Court,* GRIDLEY, J.   The questions arising on the bill of exceptions in this cause depend on the construction to be given to the 351st and 352d sections of the code of 1848. These sections are in the following words:

" § 351. No person offered as a witness shall be excluded by reason of his interest in the event of the action.

§ 352. The last section shall not apply to any person for whose immediate benefit it is prosecuted or defended, nor to any assignor of a thing in action assigned for the purpose of making him a witness."

After a preliminary examination of Jesse Thompson, a witness offered by the plaintiff, the defendant's counsel objected to his competency, on the ground that the action was prosecuted for his immediate benefit; and also on the ground that he had assigned the note on which the suit was brought, for the purpose of making himself a witness.

I. The first inquiry is whether the action was prosecuted for the *immediate benefit* of Thompson.   If Thompson is to be believed, he assigned the note to Evarts, and received a note made by Evarts, of the same date and amount and payable at the same time, as a consideration of the transfer; and without any understanding that his right to enforce the payment of Evarts' note should depend on a recovery upon the note now in suit. In other words, it was a bona fide exchange of notes.   And the consequence of that exchange was that Evarts became the absolute owner of the note which Thompson assigned to him. Evarts, therefore, and not Thompson, was the beneficial as well as the legal and nominal owner of the note.   If this be so, it can not be maintained that the action was prosecuted for the " *immediate benefit*" of Thompson.   To satisfy the words of the act, I think a person must be the party, beneficially interested, who owns the note, bond, or chose in action, which forms the foundation of the action.   The assignee, who owns a bond on

Evarts *v.* Palmer.

which a suit is instituted in the name of the obligee as the nom-
inal party, is an instance of a party for whose "immediate ben-
efit" a suit is prosecuted.  So too, the owner of the note in the
case of *Mauran* v. *Lamb,* (7 *Cowen,* 174,) is another instance
illustrative of the difference between a mere *witness* who is ben-
eficially interested in the event of the suit, and a *party,* who is
beneficially interested in the subject matter of the action.  A
person thus situated was, in the case cited, adjudged to be the
real party in the suit, and, like the party on the record, not sub-
ject to be called as a witness by the adverse party.  That this
is the true interpretation of the phrase under consideration is
apparent from the 350th section of the code, which subjects a
person "for whose immediate benefit the action is prosecuted"
to an examination as a party to the action, though he be not
the party on record.  We have seen that the party beneficially
interested could not be compelled to testify against himself.
The legislature, therefore, when they deemed it proper to sub-
ject the *party to the action* to an examination by his adversary,
enacted the 350th section, with the view of placing the *party
in interest* on the same footing.  If we are right in this conclu-
sion, then Thompson was not, within the meaning of the act,
the "person for whose immediate benefit the suit was prosecu-
ted," and he was therefore not incompetent under that provision
of the act.  I have said that, on the question of competency,
the judge was bound to regard the exchange of notes as a valid
and bona fide transaction, for the reason that Thompson testi-
fied that it was so, and that on this question he was the defend-
ant's witness.  But, we are bound to say, that there was much
in the testimony of the witness, if it had come out on cross-ex-
amination, to lead a jury to suspect that the transfer was a
mere cover, never intended by the parties to it to change the ti-
tle to the note, or to affect the interest of Thompson in it.  Up-
on such a conclusion, Thompson would be responsible to the
defendant for his costs as the real party; and that interest could
not be divested by any releases executed between Thompson and
the plaintiff.

II. It remains to inquire whether the witness was incompe-

tent on the ground that he had assigned the note in question for the purpose of becoming a witness. It is not claimed, that after the execution of the releases, he remained interested in the event of the suit, unless he could be regarded as the real party in the suit. If he had no interest in the event of the suit, then the assignment of the note on which the suit is brought, though made with the view of making himself a witness, does not affect his competency. The code does not declare such an assignor incompetent ; but only that the 351st section shall not apply to him. That section merely provided that interest should no longer disqualify a witness. If that section is held not to apply to this case, then the witness, having no interest in the event of the suit, is competent upon general principles. The code was intended to enlarge, and not contract, the rule respecting the competency of witnesses. I have heretofore had occasion to examine this question in the *Hamilton and Deansville Plank Road Co.* v. *Rice,* (1 *Code Reporter,* 108,) (*a*) and see no reason to change the opinion there expressed. A new trial must be granted.

New trial granted.

(*a.*) See *Ante, p.* 157 ; *S. C. at the General Term.*

---

SAME TERM.    *Before the same Justices.*