BUMP <em>vs.</em> VAN ORSDALE.

Where, in an action upon a promissory note payable to M. N. or bearer, brought by a person to whom the same had been sold and delivered by M. N., the latter is examined as a witness in behalf of the plaintiff, the defendant is a competent witness to be sworn in his own behalf, and examined to the same matters testified to by M. N., the former owner of the note.

THIS was an action brought to recover the amount of a promissory note given by the defendant, of which the following is a copy: "$40. For value received, I promise to pay Margaret Norton or bearer, forty dollars, one year from date, with use. Dated South Bainbridge, May 14, 1845.

(Signed) JOHN VAN ORSDALE."

Bump *v.* Van Orsdale.

The action was tried before Robert O. Reynolds, Esq. the referee, and a report made therein finding due to the plaintiff $58,25, on the 6th day of January, 1852. It appeared on the trial that the payee of the note transferred it to Jerusha Van Orsdale in October, 1845, and that she afterwards sold and transferred it to the plaintiff in this suit, who paid her $40 for the same. The defendant then offered himself as a witness in the action, under § 399 of the code of 1851, on the ground that Jerusha Van Orsdale, the assignor of the note in controversy, had been called and examined as a witness by the plaintiff, and the defendant was offered to the same matters testified to by her. The plaintiff objected to the competency of the defendant as a witness in this action. The referee sustained the objection, and the defendants' counsel excepted. This was the only question presented by the bill of exceptions.

*Stephens & Duell*, for the appellant.

*Sayre & Banks*, for the respondent.

CRIPPEN, J. By the code of 1848, § 351, it was provided that no person offered as a witness should be excluded, by reason of his interest in the event of the action. This provision, however, was declared not to apply to a party to the action, nor to any person for whose immediate benefit it was prosecuted or defended. The code was amended in 1849, and the above section divided into two sections. Section 398 re-enacted the first paragraph of § 351 as an independent section ; and § 399 enacted the remainder of § 351 of the code of 1848, and amended the same by adding thereto, " that the preceding section shall not apply to any assignor of a thing in action assigned for the purpose of making him a witness."

The courts in giving a construction to § 399 of the amended code of 1849, decided that it did not exclude an assignor as a witness, unless he had an interest in the event of the action, although the demand was assigned by him for the purpose of

becoming a witness. (7 *Barb.* 157. 3 *Howard's Pr. Rep.* 401. 5 *Id.* 8.)

The code was again amended in 1851, and § 398 of the code of 1849 remained unaltered; but that part of § 399 relating to the exclusion of an assignor, where the demand had been assigned for the purpose of making such assignor a witness, is entirely omitted, and the following provision adopted in its place: " when an assignor of a thing in action or contract is examined as a witness on behalf of any person deriving title through or from him, the adverse party may offer himself as a witness to the same matters, in his own behalf, and shall be so received."

Under the foregoing provision of the amended code of 1851, the defendant insists that he was a competent witness to be sworn in his own behalf, and examined to the same matters testified to by Jerusha Van Orsdale, the former owner of said note, and from whom the plaintiff obtained the same.

The promissory note on which the action was brought, was payable to Margaret Norton, or bearer. It was therefore negotiable by mere delivery, without any other act or assignment on the part of the person transferring the same; and the holder thereof became *prima facie* the owner of said demand. Prior to the code, the payee of a promissory negotiable note, who had transferred the same, and parted with all his interest therein, was a competent witness for the plaintiff in a suit brought to recover on such note. He is still a competent witness in such suit, and may be sworn and examined on the part of the plaintiff. The question then arises, whether the defendant may not also be sworn and testify in his own behalf, in case the plaintiff calls and examines the person through or from whom he derived his title to said note; or, in other words, whether the transfer of a negotiable note by mere delivery is in fact an equitable or legal assignment of a thing in action, or a contract within the meaning of the foregoing provision of § 399 of the code.

The advantages of commerce, from the use of bills of exchange, induced the courts at an early day to allow them certain peculiar privileges, in order to give full effect to their utility; the

first and most important of which was, that although a bill of exchange is a chose in action, yet it may be assigned so as to vest the legal as well as equitable interest therein in the indorsee or assignee, and to entitle him to sue thereon in his own name. (*Chit. on Bills*, 4.) Chitty again says, at page 5, that the first peculiar privilege of a bill of exchange is its *assignable quality.*

Again; Chitty says that it is well established that bills of exchange, whether payable to order or bearer, are equally negotiable from hand to hand ad infinitum; and that the transfer vests in the *assignee* a right of action on the instrument *assigned,* sustainable in his own name. But in general, unless the words " or bearer," " or order," or some other words authorizing the payee of a bill or note to *assign* it, be inserted therein, it can not be transferred so as to give the *assignee* a right of action against any of the parties, except the indorser himself. (*Chit. on Bills,* 108.)

A transfer by delivery, without any indorsement, when made on account of a pre-existing debt, or for a valuable consideration passing to the *assignor* at the time of the assignment, imposes an obligation on the person making it, to the person in whose favor it is made, similar to that of a transfer by indorsement. And it is now settled that, in such case, unless it was expressly agreed at the time of the transfer, that the *assignee* should take the instrument *assigned,* as payment, and run the risk of its being paid, he may, in case of default of payment by the drawee or maker, maintain an action against the assignor, on the consideration of the transfer. (*Chit. on Bills,* 143.)

Where a transfer by delivery, without indorsement, is made merely by way of sale of a bill or note, or by way of discount, and not as a security for money lent; or where the *assignee* expressly agrees to take it in payment and run all risks, he has in general no right of action whatever against the *assignor.* (*Chit.* 145, 6.)

Chitty, as will be seen by the foregoing references, regards the transfer of a bill or note, an assignment of the demand, and the person making the transfer the *assignor,* and the one taking

it, the *assignee*. No matter in what way a demand is transferred, whether by mere delivery, as in the case of promissory notes payable to bearer, or by indorsement of a note payable to order, or by verbal or written agreement, the thing itself, the demand passes from one to the other. The words, transferred, set over, assigned, have the same meaning in such cases. The person transferring the demand, is in fact and in law the assignor of it, and the person to whom it is transferred, or set over, the assignee. Webster gives the following definition of the word " assign :" to allot ; to make or set over ; to transfer ; to sell or convey. Bolles, in his dictionary, says that the word " assigning" means allotting ; appointing ; transferring.

*Everts & Scranton* v. *Palmer*, (7 *Barb. Rep.* 178,) was an action brought on a promissory note made payable to the defendant or order, and indorsed by him. The note had been transferred to the plaintiffs by one Thompson. Griffin, the maker of the note, testified that the defendant indorsed the note for his accommodation, and that he transferred it to Thompson. The plaintiffs offered Thompson as a witness on the trial. The court in their opinion regard Thompson as the assignor of the note within the meaning of sections 398 and 399 of the code of 1849. In *Canfield* v. *Monger*, (12 *John.* 346,) Monger delivered a note he held against one Lindsey to Canfield, to receive the amount and apply on a note from Monger to Canfield. The court say in their opinion in that case, that the delivery of the note to Canfield amounted to an equitable assignment and vested in him an interest which Monger could not defeat at his pleasure.

In *Prescott* v. *Hill*, (17 *John.* 292,) the court say in their opinion that the mere delivery of a chose in action upon a good consideration is an assignment of the demand. It appears quite clear from a careful examination of this case that the learned referee erred in excluding the defendant as a witness under the offer of his testimony, to be confined to the same matter about which the prior owner and holder of the note had testified on her introduction as a witness on the part of the plaintiff.

I am satisfied that this construction is within the letter and spirit of the amended code of 1851. The report of the referee

Bump *v.* Van Orsdale.

should therefore be set aside; costs to abide the event of the suit, and a new trial granted.

SHANKLAND, J. I am of opinion the referee erred in excluding the defendant from being a witness in his own behalf, under the 399th section of the code. It declares that " when an assignor of a thing in action, or contract, is examined as a witness, on behalf of any person deriving title through, or from him, the adverse party may offer himself as a witness to the same matter in his own behalf, and shall be so received."

It is true, the usual term applied to the parties transferring negotiable mercantile paper, is not "assignor," nor is the usual term applied to the *act* of transfer "assignment;" but the words *indorser*, *bearer*, transfer, negotiate, are the proper mercantile terms. But, "assignor, of a thing in action, or contract" comprehends a much larger class of contracts than mercantile paper, and must include them also.

So, the word "assignment" means the conveyance of the interest a man has in an estate, or chose in action; and is more comprehensive than the terms indorser, negotiate, or the like mercantile words applied to negotiable paper. The terms of the section being sufficiently comprehensive to include the case of one who transfers negotiable paper by mere delivery when it is made payable to bearer, as in this case, we are next to examine whether there is any reason why the case should be excluded from the said section.

It had become quite common for the holders of negotiable paper which was infected with usury, or other seeds of a valid defense, to transfer them to others, in order to embarrass defendants, and to enable the former holders to become witnesses in the causes, in favor of their assignees; and when the code of 1848 authorized and required all actions on contracts (§ 91) to be prosecuted in the name of the real party in interest, in accordance with the old equity practice, it was foreseen that an increase of the former evil would be the consequence, unless some countervailing check was provided. Accordingly, in section 352 of that code, they enacted that the last section (§ 351)

should not apply to a party to the action, nor to any person for whose immediate benefit it is prosecuted or defended; nor to any assignor of a thing in action, assigned for the purpose of making him a witness." That section intended to exclude an assignor from being a witness, if he assigned for the purpose of making himself a witness. The *cause* of the exclusion was not that he remained *legally interested*, but on the ground of *public policy*.

The courts in Pennsylvania had established it as a rule of evidence, in that state, long prior to our code, and held it to be contrary to public policy to allow the assignor of a chose in action to be a witness in favor of the action. They say, "This rule is founded on reasons of public policy and justice; and was imperiously demanded by the experience of the frauds and corruptions to which the former practice led, where a party might create, or establish a contract for his own benefit, and derive an advantage by establishing it by his own oath. It enables him to bring his own oath into market." (2 *Barr's Pa. Rep.* 46. 5 *Id.* 395. 6 *Id.* 325, 398. 7 *Id.* 315. 10 *Id.* 428.)

The codes of 1848 and 1849 intended to adopt the same principle here; but the decision of this court in *Everts* v. *Palmer*, (7 *Barb.* 178,) by overlooking the true ground of exclusion of the witness, and by putting it upon the ground of interest only, had a direct tendency to defeat the usefulness of the provision, and render it abortive. It was doubtless in consequence of this decision that the legislature, in their amendment of the code, in 1851, changed the section, by *omitting* to exclude the assignor of a thing in action, although assigned for the purpose of being a witness, but allowed the adverse party to be a witness to the same matter, as a countervailing check. This provision is wiser and better calculated to elicit truth than the former one. But the history of legislation, on this subject, I think, shows conclusively that the section includes parties to negotiable paper. In the case of *Everts* v. *Palmer*, above cited, the words "assignor of a thing in action," were thought to include the case of a vendor of a negotiable note. The words of the present section are equally extensive.

But an examination of other sections of the code proves that an assignment of a promissory note is within the terms "*assignor of a thing in action.*" Section 111 of the code of 1851 enacts, that "every action must be prosecuted in the name of the real party in interest, * * * * * but this section shall not be deemed to authorize the assignment of a thing in action, not arising out of contract." It is quite clear this section includes negotiable paper of all kinds. The next section is, "In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off, or other defense existing at the time of, or before notice of, the assignment; but this section shall not apply to a negotiable promissory note, or bill of exchange transferred in good faith, and upon good consideration, before due." All other notes and bills are, of course, included in this section, and those excluded would have been included in the words "*assignment of a thing in action,*" had it not been for the express exception.

In the case of *Billings* v. *Jane,* decided at the last term of this court,(a) we held, that a note payable to the order of F. U. Fenno, passed by a sale and delivery for a good consideration, without indorsement, so as to enable the assignee to maintain the action in his own name under section 111. (*See also Hedges* v. *Seely,* 9 *Barb.* 215.)

We have thus seen that the negotiation of commercial paper, by delivery or other modes of transfer, is within the meaning of the term assignment as used in the code. That such contracts are things in action, and that the assignor of such contract is within the intent and policy of the law. In my judgment we should hold the defendant a competent witness in his own behalf in this case; and for the reason that he was excluded a new trial should be granted; with costs to abide the event.

There is as much necessity of applying the provisions of this section to the cases of negotiable paper, as to any other in the whole range of legal controversies, and the policy of hearing

(a) *Ante, p.* 620.

both sides, on their respective oaths, should be most liberally applied.

MASON, J. and GRAY, J. concurred.

New trial granted.

[DELAWARE GENERAL TERM, July 13, 1852. *Mason*, *Shankland*, *Crippen* and *Gray*, Justices.]