BEENE v. THE CAHAWBA AND MARION RAIL ROAD COMPANY.

1. When the charter of a Rail Road Company directs that books of subscription shall be opened, and all persons are admitted to become members of the corporation, by subscribing for stock, the act of subscribing creates a contract with the corporation to pay for the shares subscribed, in the manner provided by the charter: and an action may be maintained to recover instalments called for by the corporation, notwithstanding another remedy may be given by the charter authorizing a sale of the stock, whenever it can be sold at the par value.

2. A corporation may maintain assumpsit upon a contract to take its stock at a specific price.

3. So, also, it may declare on a contract to take stock agreeably to the provisions of its charter; and to such a declaration the common counts may be added.

4. A declaration by a corporation on a contract to take and pay for stock by instalments, and which also states that the action is brought for the use of another, is not evidence that the stock sued for, has been transferred by the corporation.

5. Where the name of a corporation has been changed by an amendatory act, and suit is brought by it in its first name, it is not necessary that the corporation should show the amendatory act has been rejected by its stockholders.

6. Where suit is instituted by the plaintiff in a mistaken name, and the right name is carried into the declaration, with an averment that the defendant was served with process issued in the mistaken name, the variance between the writ and declaration can be pleaded in abatement, and the defect is not cured by the declaration.

Writ of error to the County Court of Dallas county.

THE *capias* describes the plaintiffs by the name of the Cahawba, Marion and Greensborough Rail Road Company, but they declare as "The Cahawba and Marion Rail Road Company, at whose suit, by the name of the Cahawba, Marion and Greensborough Rail Road Company, the defendant was served with process; and who sue for the use of Julius Snead, by attorney, &c."

The first count of the declaration states the incorporation of the plaintiffs by an act of the Legislature of this State on the 15th day of January, 1834, and then proceeds to allege that the defendant afterwards, on the 29th day of March, 1837, in consideration that the corporation, at his request, had admitted him to take twenty shares of the stock of the corporation, and to that extent to become a proprietor therein, he then and there promised and undertook to pay the corporation the sum of two thousand dollars, and agreed to pay the same on request.

The second count states that the defendant subscribed for twenty shares of the stock of the corporation, and thereby became a member of and a proprietor in the same, and did then and there promise that he would pay all assessments which should be legally assessed by the corporation, upon the said twenty shares, and then proceeds to allege, that on the 9th day of January, 1840, the said corporation legally assessed an instalment of five per cent. to be required of the stockholders on the amount of stock subscribed, and to be due and payable on the 1st day of March, 1840; which said assessment amounted to one hundred dollars on the shares subscribed by the defendant; of all which he had notice. There is also an averment, that at the time when this assessment became due and payable, the said stock could not be sold at par value, for the sum so due; nor could it be so sold at any time since that period; whereby, &c.

The third count states the incorporation of the plaintiffs, the

ALABAMA.

Beene *v.* The Cahawba and Marion Rail Road Company.

subscription of twenty shares by the defendant, whereby he promised the said plaintiffs to pay them all instalments which should be legally assessed on said shares, and alleges an assessment of five per cent. in the same manner as in the second count, but omitting the averment respecting the inability to sell the stock for par value.

The fourth count is a general one, for rail road stock sold by the plaintiffs to the defendant, and also containing the allegations of the common money counts, &c.

The defendant appeared, craved *oyer* of the *capias*, and pleaded in abatement, the issuance of the writ and declaration with respect to the name of the plaintiff. This plea was demurred to, and the Court sustained the demurrer.

The defendant then demurred to each count of the declaration. These demurrers were overruled. He then pleaded in bar, *non assumpsit, nul tiel corporation,* forfeiture of the charter by *non-user,* and the same by *mis-user.* Issues were joined on these pleas, and a verdict found for the plaintiffs, on which judgment was rendered.

At the trial, a bill of exceptions was taken by the defendant, from which it appears that the Court charged the jury that the declaration was no evidence of the transfer of the instalment or stock, to Julius Snead.

The defendant requested the Court to charge the jury,

1. That under the plaintiff's evidence of charter, to wit, an act of incorporation, approved the 18th January, 1834, and the amendment of said charter attaching the name of Greensborough to the corporate name, and extending the route of the road from Marion to Greensborough, they had no right to sue in this case, by the name used in the declaration, without proof that the amendment of 1839, was rejected by the stockholders of the corporation.

2. That under the acts of 1834 and 1839, together with all other amendatory acts, no suit can be maintained for an instalment on the stock of any member of the corporation.

3. That the books of subscription, and the call for instalments mentioned in the declaration, and made by the corporation, are no evidence of an express promise to pay the stock therein subscribed, or any instalment thereon ordered by authority of the corporation.

Beene *v.* The Cahawba and Marion Rail Road Company.

The book of subscription contained the names of the defendant and many other persons signed to an instrument of the following effect:

Cahawba, Dallas county, State of Alabama.

A book of subscriptions to the capital stock of the Cahawba and Marion Rail Road, opened on the 20th day of March, 1837, by order of the board of directors, assembled in the town of Cahawba on the 15th day of March, 1837, under the direction of James J. Craig, Richard C. Crocheron, Joseph Babcock and P. Walter Herbert.

The names were signed thus:

| Date | Names | Number of shares | Total stock. |
|---|---|---|---|
| March 29, | Jesse Beene | 20 | 2,000 |

The Court refused to give these charges, and thereupon the defendant excepted, as well to the charges given as to those refused, and now prosecutes his writ of error.

All the questions decided in the County Court, are opened by the assignment of errors.

. G. W. GAYLE, for the plaintiff in error, cited, as to the plea in abatement, 1 Chitty Plead. 383; 1 B. & P. 382.

As to the main question, Minor, 103; 1 Caines, 380; 9 Johns. 217; 14 ib. 244; 1 Caine's Cases in Error, 86; 6 Mass. 40; 8 ib. 138; 10 ib. 334; 14 ib. 286; 16 ib. 94; 5 S. & P. 17.

EDWARDS, contra.

GOLDTHWAITE, J.—1. The principal question presented in this case, is one of importance, from the connexion which many individuals have, or have had, with various plans of internal improvement, and other objects of enterprise, through the medium of private acts of incorporations, granted by authority from this State. It requires us to determine whether this corporation can compel payment from the defendant for certain shares said to have been subscribed by him in its stock. It is apparent, that an examination of the act of incorporation, to some extent, is necessary for the proper answer to this question.

The act was passed in January, 1834, and by its first section, directs and provides that Thomas Moring, as President, and twelve other gentlemen therein named, as directors, and

their associates and successors in office, shall be, and they thereby were made a body politic and corporate, by the name and style of the Cahawba and Marion Rail Road Company.— Power was given to the corporation to sue and be sued, to purchase, receive, hold, sell and convey real and personal estate, as natural persons; to pass such by-laws, rules and regulations, for the good government of the company, as to them should seem proper, and generally to exercise all powers, and to perform all acts, matters and things which they might deem necessary to carry into full and complete effect, the object of their incorporation. And the only restriction is, that their re-. al and personal estate shall never exceed one million of dollars.

The second section provides that the President and Directors shall continue in office until the 1st January, 1835, and until their successors shall be elected and qualified; that they shall cause books to be opened at Cahawba and Marion, and at such other places as they may deem proper, for the subscription of stock, and shall give thirty days notice previous to opening such books, at the several places at which books are to be opened; and shall also publish the same in the Selma Free Press; and said books when opened, shall be kept open for the space of ten days, and may be opened from time to time, until a sufficient amount of stock shall be subscribed; which stock so subscribed shall be divided into shares of one hundred dollars each.

The third section, provides for the manner in which the election for President and Directors shall be held, after the subscription of stock; and also, that the stock shall be transferable on the books of the company; and that the holder shall be entitled to all the benefits, and subject to all the liabilities of an original stockholder.

The fourth section provides, that when the company shall have been organized, the President and Directors of the said company shall have power to borrow money, contract debts, and be contracted with upon the credit of the stock thereof, and to pledge real or personal estate, for the payment of their debts; it also provides that the President and Directors may require such instalments to be paid on the stock, as they may think best for the interest of the company; and on failure

of any stockholder to pay the amount due upon his, her or their stock, in pursuance of any call made by the President and Directors, as aforesaid, within sixty days after such call, they shall be authorised to sell said stock: *Provided,* the same can be sold at not less than par value, for the amount so due.

The remaining sections declare the object for which the corporation was created, which is the construction of a Rail Road from Cahawba, in Dallas county, to Marion, in Perry county.

It is urged by the counsel for the defendant, that the legislature intended that this corporation should have no other remedy against delinquent stockholders, than that which is given by the charter; and that they can be bound in no other manner, unless they have subjected themselves to be sued at common law, by an express promise.

We think a careful examination of the act of incorporation, will entirely disprove the first branch of this proposition. We cannot conceive that the legislature intended to confer the franchise contemplated on such as might associate together, without requiring from them something in return. The charter seduously guards the public from the evils which might ensue from a monopoly by individuals, of the whole number of shares, by requiring notice to be given of the times and places for opening the books of subscrition, and by requiring them to remain open for a certain number of days. On the persons subscribing, and on them alone, are the privileges conferred, and it would be unreasonable to conclude, that the act of subscription, gave to those subscribing, a chance of gain, without the possibility of loss; which would be the case if a subscriber could afterwards withhold the amount of his subscription with impunity. It will be seen from the fourth section, that the corporation has no power to sell the stock of a delinquent subscriber, unless it will bring the par value. Now it seems perfectly clear, that in those cases where nothing had been paid, that a sale could not be made, unless the unpaid share would sell for as much as one entirely clear; therefore, if this is the only remedy which the corporation has against its individual members, it never could be carried into successful operation, without voluntary contributions.

But, independent of the reasons which arise from the circumstance, that the corporation was opened to every one, to

42

become a stockholder, we think that several clauses of the act itself, point directly to a common liability of all the stockholders. Thus, that which provides for the transfer of stock, declares that the holder shall be entitled to all the benefits, and subjected to all the liabilities of an original stockholder.

Again, the company is authorised to borrow money and contract debts on the credit of its stock, and it seems to us that this power would never have been conferred, unless the stockholders were bound whenever this credit was acted on.

A different construction would leave the stockholders, who have *bona fide* advanced their money in aid of the enterprise, in a condition of great embarrassment, and also, in great danger of actual loss, from the mere refusal of their associates to proceed according to their engagements.

It may be admitted that no one can be bound to contribute to the expense of making this road in any other manner than by an express promise, and we can view the contract of the defendant in no other aspect. It will not be denied, if the defendant had signed an agreement, which, after reciting the charter, had furthermore contained a stipulation to take and pay for a certain number of shares, according to its provisions, that he would be thus bound, and the agreement which he has signed, is nothing more or less. It purports to be a book of subscriptions to the capital stock of the corporation, opened by the order of its President and Directors, and the defendant, by his voluntary act, subscribes for twenty shares. He acts with reference to a known law, which even the Courts are bound to recognize, in the same manner as a public act. Aikin's Digest. 283, § 139. And conforms to the very terms of the charter, which prescribes that books of subscription shall be opened.— The act of subscription thus made, is equivalent in every respect, to an express contract, and the terms prescribed in the charter, attach to it as effectually as if they had been written at length.

The cases cited from Massachusetts, admit that a member of a corporation may become bound by an express contract, to pay assessments, although an agreement to take shares in an incorporated association, will not be construed as such a contract. We are not aware of the terms contained in the statutes under which these decisions were made, but if similar to that

we have just considered, we feel constrained to declare the law to be otherwise. Worcester Turnpike v. Williams, 5 Mass. 80; Andover and Medford Turnpike v. Gould, 6 ib. 40; New-Bedford and Bridgwater Turnpike v. Adams, 8 ib. 138. The principles we have laid down as governing this case, are sustained by numerous decisions, and we may remark, that none have been found, except those of Massachusetts, which held a different rule. Duchess Manufacturing Co. v. Davis, 14 John. 238; Goshen Turnpike v. Hustin, 9 John. 217; Herkimer Manufacturing Co. v. Small, 21 Wend. 273; Instone v. Franklin Bridge Co. 2 Bibb, 577; Hagerstown Turnpike v. Creeger, 5 H. & J. 122; Bond v. Susquehannah Bridge Co. 6 H. & J. 128; Delaware and Schuylkill Co. v. Sansom, 1 Binney, 70.

We proceed then to the application of the law thus ascertained, to the several points made in this case.

The first count is upon a general contract made by the defendant with the corporation to take and pay for a certain number of shares in its stock, at a specified price. We can perceive no fault in point of law in this count, inasmuch as the corporation is not precluded from making such a disposition, and it is amply warranted by its general powers. If the matter to be decided, was whether the evidence sustained the count, we might and probably should arrive at the conclusion that it was not supported.

The second and third counts are drawn with reference to the act of incorporation, and set out a contract between the parties, which has already been shewn to be properly deducible from the charter, and the subscription of shares by the defendant. The superfluous allegation that the stock could not be sold by the corporation at par value, does not vitiate the count which contains it. Both are free from valid objection, as is also the common count.

There was, therefore, no error in overruling the demurrers to the several counts.

Neither can we consider the declaration as defective in shewing for whose use the action was instituted. It contains no evidence whatever, that the stock of the defendant had ever been transferred to Snead.

The amendatory act of 1839, authorises the stockholders of

the corporation to change its name by the insertion of "Greens-borough," and also to extend the road to the town of that name; but it was entirely unnecessary for the plaintiffs to show that the amendment (if such was the fact) was rejected by the stockholders.

What we have already said with respect to the principal question, necessarily determines that the other charges were properly refused.

There is one matter which we hitherto have omitted to notice, because its decision did not affect the general question.— We allude to the sustaining of the demurrer to the plea in abatement. A similar question was raised in Findlay v. Pruitt, 9 Porter, 195, and we then held that such a variance as this would defeat the action, if properly pleaded.

It is true, that Mr Chitty states the rule differently, but the cases to which he refers as authority, are cases in which the defendant was misnamed in the process.

If the name of the plaintiff can be thus changed, there is nothing to prevent the introduction of a different party to the record. Willard v. Missani, 1 Cowen, 37.

For this error, the judgment of the County Court must be reversed and remanded, if desired by the defendant in error.