Wardlaw, J.
dissenting. The paper signed by the defendant, unintelligible of itself, by reference to the charter shews the agreement of the defendant to take, in stock of an existing company, five shares of $20 each, and to pay the amount of his *96 shares in instalments as they should be regularly called for, under pain of forfeiting his shares, with the past payments made thereon, for any neglect of such payment. It was not an agreement to pay money unconditionally, but an agreement to take stock upon the conditions expressed by the charter; and one condition was, that the consequence of non-payment should be forfeiture. This gave to the Company the right of declaring forfeiture when it was incurred; and it gave to the subscriber the right of stopping his payments whenever he was willing to endure the prescribed penalty. It was intended for the mutual benefit of the Company and of the subscriber — calculated on one hand to facilitate the procuring of subscriptions sufficient for the formation of the Company, and on the other, to save a stockholder from the necessity of persevering in the contemplated enterprise, if he thought the loss would be greater than the sacrifice of his past payments. The option which, upon every call for an instalment, the stockholder could exercise, either to pay or to incur forfeiture, was the same, whether the Company availed itself of the right which non-payment gave to it, or forbore to do so. To creditors and other stockholders of the Company, the withdrawal upon the condition expressed, of every stockholder unwilling to pay, could not be considered unjust; for all must be presumed to have acted with the knowledge of his right to do so, and to have looked to the forfeiture as sufficient either to coerce payment or to indemnify for its neglect. If a great depreciation of the stock should have rendered this expectation fallacious, then they are in the condition of others who have trusted to an insufficient security or ventured upon an unprofitable speculation. The charter provides that a cash payment of five dollars per share shall be necessary to perfect a subscription, and, as Lord Keyon said, (7 Term, 36, speaking of arguments from inconvenience urged to shew that even after assignment of his shares, a subscriber should be held liable to suit,) “ The Legislature, rvhen they gave their sanction to this undertaking, did not suppose that it was a mere South Sea scheme: they thought it a beneficial undertaking for the public, and conceived *97 they had provided a sufficient check, by enacting that if the subscribers would not pay their money from time to time, as they should be required by the committee, they should forfeit their respective shares.” The meaning of the agreement contained in the subscription is solved by a construction of the charter, and that, under the view which I have taken, depends upon the hacknied but sound maxim, expressio unius ex-clusio alterius. The Company has the right to sue, which is incident to every corporation; under our Act oí 1792, (8 Stat. 175,) it has the right “ to recover, by suit, arrears and debts from its members in the like manner as it might recover the same from indifferent persons.” But it can sue neither member nor indifferent person for that matter wherein the charter, by express grant of a special remedy, different from a suit, has, by implication, negatived all other remedies. It seems to me that where, as in the charter of this company, forfeiture is mentioned in immediate connection with the payment of subscriptions, as the consequence of non-payment, to hold that the right of the company to sue, for the instalments required, was implied, and the expression of the remedy, by forfeiture, was intended to make it merely cumulative, would be to hold that the expression of the less includes the greater, and would contravene the principles of interpretation applied to the most favored instruments, much more those which prevail in construing grants of powers to corporations.
The forfeiture of shares, as a remedy for non-payment of subscriptions, has been familiarly known in this State. In almost the same words which are used in the charter of this company, it has been introduced into the charters of banks and companies for public improvements, since 1810, when the first charter for a bank was granted, in anticipation of the subscription and payment of the stock. I believe that, before the present, there has been no attempt, under any bank charter, or any charter for a public improvement, to compel payment of a subscription by suit, when the remedy by forfeiture had been provided; although numerous occasions have occurred, especially under the charter *98 of the Louisville, Cincinnati and Charleston Railroad, when it was highly desirable for the advancement of the contemplated enterprise, and for the interest of the stockholders, that delinquent subscribers should have been compelled to perform their engagements, if their subscription could have been interpreted to mean an express promise to pay their shares without condition. A case lately arose where the vestry and wardens of an incorporated church sued a member for an assessment on his pew, although the charter gave, for non-payment of assessments, the remedy by sale of the pew; but that case was settled or abated before it .came to decision. In the case of Palmetto Lodge vs. Hubbell, (2 Strob. 458,) a distinction was made, on the Circuit, between a corporation, whose shares have a money value, and a mere charitable one, which has no stock tangible or accessible ; and, in that case, the subscription contained an express promise “ to pay all legal démandsmoreover, it may be observed that, there, suspension, which was argued to be an exclusive remedy, was not mentioned in the charter, but was provided by a by-law, which was construed to shew that the obligation to pay subsequent dues was not arrested by the suspension. I think that the general sense of this community may well be said so to have settled the construction given to the express grant of forfeiture, as a remedy for non-payment of shares subscribed, that legislators and stockholders might fairly be supposed to have acted in conformity with that construction, even if its propriety was more doubtful than I think it is. Confirmation of this may be drawn from the Acts of the Legislature concerning this company, and cotemporaneous Acts. In 1846, when the charter of the company was. renewed and re-granted, with some amendments unimportant here, a charter was granted to the Charlotte and South Carolina Railroad Company, which contains the grant (for the first time expressly made in this State) of the power to recover instalments of subscription by action of debt, in addition to the special remedy by forfeiture: (11 Stat, 462.) And, in 1849, after the subscription of the present defendants, (11 Stat. 575,) by an amendment of the charter of this Greenville and *99 Columbia Railroad Company, it was provided that subscriptions “may be enforced in any Court of law in this State, any law, usage or custom to the contrary notwithstanding, without any pretence of forfeiture whatever, except as the said company may choose to declare forfeitures to enforce collections.” If the power claimed now might have been implied, why was it so specially granted to the Charlotte & S.'C. Company? If it existed before, why was it asked by this company and granted to it in 1849 ?
On this subject there have been conflicting decisions in the United States. The cases are all collected in the 15th ch. of Angel & Ames on Corporations, and have been cited in an able argument, made in this Court, by the appellant’s counsel. Of these cases, most of those opposed to the views I have ventured to express, seem to me to be liable to just objections which may be made to their reasoning, or to be distinguished by some material circumstance from the case now in hand. For instance, in Instone vs. Frankfort Bridge Co., (2 Bibb, 577,) the rights and immunities which, under the charter, attached to a member, and which the defendant acquired by his subscription, were held to constitute the consideration for his promise to pay, which, by construction, was found in the subscription; and yet the obligation to pay is said not to be given by the charter, but to arise from the consent of the defendant; and the special remedy is held to be cumulative, not exclusive, because an affirmative statute does not take away the common law, when, by the common law, independently of the charter, no remedy by suit, or otherwise, could have been had on the subscription.
In the Tar River Navigation Company vs. Neal, (3 Hawks, 520,) and in the Selma & Tennessee Railroad Co. vs. Tipton, (5 Abr. 787,) the main question was, whether, under the provisions of the charter, the company had an existence. There was an express promise, in writing, to pay a certain sum of money; and, in the first of these cases, some stress was laid upon the use, in the charter, of may and not shall, which was supposed to leave a discretion to be exercised by the company. In Beene vs. The Cahaba & Marion Railroad Co., (3 Ala. 660,) *100 no sum was required to be paid at the time of subscription, and the charter spoke of the liability of the subscriber, and gave power to the company to borrow money and contract debts on the credit of its stock — from which it was inferred that the sale of shares, authorized in case of non-payment, could not have been contemplated as the exclusive remedy against a stockholder, whose shares may be wholly unpaid, and whose withdrawal would, without any compensating advantage, bring embarrassment and loss upon his associates, who have advanced money in reliance upon his engagements.
It cannot, however, be disputed that the principles upon which these cases, and others that have been cited, were decided, support the present action. A choice must be made between opposing authorities; and my judgment cannot reach the conclusion that, under a charter like this, the subscription can be fairly construed into an unconditional agreement to pay the instal-ments called for; and that the provision for forfeiture was intended merely to introduce a cumulative remedy — a conclusion which, under any case that has been decided, I must reach before I can sustain a suit for an instalment as for a debt. For a long time past, in Acts of Parliament which have established companies in England for executing public enterprises, and in all the late railway Acts there, special provisions have been made for enforcing, by suits at law, payment of calls made in the prescribed mode upon stockholders. Without those provisions, I am persuaded that a special remedy, by forfeiture or sale, expressly given, would there be held to be exclusive, upon ,the same reasoning which, in Kirk vs. Nowill, (1 T. R. 118,) led Buller, J., to declare, that an Act which provided fine and ■amercement as the means of enforcing by-laws, negatived the right to employ other means. A direct consideration of the questions here presented seems, however, not lately to have occurred there, which may be accounted for both by the provisions made in late Acts, and by the greater influence which is there given to the doctrine of nudwm pactum, as applicable to *101 subscriptions, than the decisions in this country would warrant us to give it here.
O’Neall, J., being president of the company, gave no opinion.

Motion dismissed.