Rensselaer and Washington Plank Road Co. *v.* Wetsel.

[ALBANY GENERAL TERM, September 3, 1855. *Parker, Wright* and *Watson,* Justices.]

---

## THE RENSSELAER AND WASHINGTON PLANK ROAD COMPANY *vs.* WETSEL.

In an action to recover the amount of calls made upon a subscription to the capital stock of a plank road company, it is no defense that the name of one of the original subscribers was erased, before the articles of association were filed; where it appears that the erasure was made with the knowledge of the defendant, and of all the directors, and at the request of the person whose name was erased, and without any fraudulent intent.

On a subscription for stock, there is an implied promise to pay for it.

The remedy for non-payment is not confined to a forfeiture of the stock. That remedy is merely cumulative.

A subscription to the full amount named in the articles as the capital stock of the company is not a condition precedent to the right of recovery upon a subscription.

THIS was an action to recover the arrears upon the subscription of the defendant for twenty shares of stock in the plaintiffs' company. The plaintiffs were duly incorporated on the 8th of April, 1850. The answer did not deny the regularity of the plaintiffs' organization, or their existence as a corporation. The complaint alleged, and the answer did not deny, that on the

8th of April, 1850, the defendant signed the articles set forth in the complaint, and subscribed for twenty shares of the stock, at $50 a share. The complaint also alleged, and the answer did not deny, that he thereupon became a stockholder in the company. The answer denied merely the *legal conclusion* as the effect of such subscription, that he agreed to take and pay for the stock for which he subscribed. The complaint alleged and the answer did not deny, that on the 22d of October, 1850, the directors required payment of the amount subscribed, by the 24th of November following, and duly notified the defendant of the time and place at which such payment was required. The complaint alleged, and the answer did not deny, that $950 remained unpaid of the $1000 subscribed by the defendant. The answer alleged, 1. That the plaintiffs did not adhere to the route designated in the articles, but fraudulently changed the course of the road, after the defendant subscribed. 2. That the whole amount of the capital had not been subscribed, at the time the call for payment was made upon the stockholders. That the defendant was entitled to a set-off of $500. On the *first* of these issues, the referee found against the defendant, as matter of fact. The *second* allegation he held to be immaterial. On the *third* issue, he allowed to the defendant a set-off of $276.73, the amount agreed upon by the parties.

On the hearing before the referee, a certified copy of the articles of association of the plank road company, as the same were when filed, was introduced in evidence by the plaintiffs' counsel. This was objected to by the defendant on the grounds, 1. That there was a variance between the original articles, and the copy offered in evidence, in that the latter did not contain the name of William Van Veghten, who, it was proved, subscribed the original articles. 2. That the erasure of said Van Veghten's subscription (if actually made so as to destroy his subscription) rendered the defendant's subscription void, and discharged him from all liability to pay the same. It was proved that Van Veghten was a member of the board of supervisors of Rensselaer county, and that it was suggested by some of the directors that he ought not to belong to the company, as it might become

necessary to make application to the said board of supervisors for the appointment of commissioners to locate the road. That by Van Veghten's consent his name was erased from the articles, before they were filed. The referee overruled the objection, and received the certified copy of the articles in evidence. The plaintiffs' counsel then proved that after the route of the road had been located along the bank of the Hudson river, persons owning 302 shares of the stock of the company signed a written consent that the route of the road be changed to what was called the eastern route. And all of the inspectors of the county of Rensselaer, whose appointment is provided for in the 33d section of the act entitled " An act to provide for the incorporation of companies to construct plank roads and for companies to construct turnpike roads," passed May 7, 1847, being three in number, also gave their consent in writing to such change of route; and thereupon, and on the 20th day of August, 1850, the said plaintiffs' directors passed a resolution changing the route of said road from the said western to the eastern route.

The referee reported in favor of the plaintiffs, for $761.19, and judgment was perfected for that sum, and the defendant appealed.

*Pierson & Smith*, for the appellant. I. The referee erred in receiving in evidence the certified copy of the articles of association, notwithstanding the defendant's objection that there was a variance between the *original* and the copy. William Van Vechten subscribed 10 shares to the original articles. His name does not appear upon the copy produced at the trial, or that annexed to the complaint.

II. The referee erred in overruling the objection that the erasure of Van Vechten's subscription avoided the defendant's subscription, and discharged him from all liability to pay the same. (1.) The project of building the road was a joint enterprise between *all* the subscribers; each subscriber was expected to, and each expected the others to contribute towards the project, to the extent of the stock they respectively subscribed. The erasure of this subscription entirely subverts this understanding; it with-

Rensselaer and Washington Plank Road Co. *v.* Wetsel.

draws the amount of the subscription from the common fund, leaving the other subscribers to supply its amount; thereby enforcing upon them responsibilities not assumed, or intended to be assumed, by the act of subscription. Will it be held that one half of the subscriptions may be erased, and that the defendant shall nevertheless be held to pay his? If not, the principle for which we contend is established. (2.) There is no evidence to show that the erasure was made with the defendant's knowledge, for a fair purpose, or without any fraudulent intent, as found by the referee. John V. Lansing, the only witness sworn upon the subject, swears that the object of the erasure was to render. Van Veghten competent to act in the board of supervisors. He also avers, distinctly, that he has no recollection as to whether or not the defendant was present or knew of the erasure.

III. The referee erred in deciding that the subscribers to the articles of association were bound to pay at the rate of $50 for every share subscribed by them. These articles contain no promise on the part of subscribers to pay the sums subscribed by them; and without such promise the plaintiffs are limited to the remedy provided by § 39 of the act of 1847, viz: the forfeiture of the defendant's stock. (*Dudley* v. *Mayhew*, 3 *Com.* 9. *Almy* v. *Harris*, 5 *John.* 175. *Plowden*, 206. *Andover and Medford Co.* v. *Gould*, 6 *Mass.* 39. *Andover and Medford Co.* v. *Hays*, 7 *id.* 105. *New Bedford, &c. Co.* v. *Adams*, 8 *id.* 137. *Franklin Glass Co.* v. *White*, 14 *id.* 286. *Smith's Com.* 778, *and authorities cited.* 24 *Verm. Rep.* 465.) There is no cause of action set forth in the complaint. It does not allege any consideration for the promises. In fact there was no consideration and no mutuality of promises. It does not allege that the defendant ever received any stock; or that the plaintiffs ever offered him any; or that the plaintiffs had any stock for the defendant; or that defendant paid $5 on each of his shares before the articles of association were filed. (1 *Comstock*, 581. 2 *Pick.* 579. 11 *John.* 98.)

IV. There was no sufficient evidence to show that the defendant ever took any of the plaintiffs' stock, as alleged in the complaint. It is alleged in the complaint, that he agreed to

take the stock by subscribing his name to the articles, &c. The defendant, by his answer, distinctly denies that he ever did, as alleged in the complaint, agree to take the stock in question. It is insisted, therefore, that under the pleadings the plaintiffs were bound to prove an actual subscription by the defendant. No such proof was given or offered on the trial. A certified copy of the articles of association, although presumptive evidence of incorporation, and of the facts therein stated, (*Laws of* 1847, *p.* 217, § 3,) does not dispense with the ordinary common law proof of liability, when as in this case, the action is founded directly upon a subscription.

V. There is no evidence that the directors have made the requirement for the payments of stock directed by § 39 of the plank road law of 1837. The statute requires that the calls shall be equal upon all stock subscribed. But there is no evidence that any person, other than the defendant, has been required to pay in this company.

VI. There is no evidence that notice has been given of payments required by the directors as directed by said § 39. The statute requires that notice shall be given to all the subscribers. But there is no evidence that notice has been given to any other person than the defendant.

VII. The referee erred in deciding that it was of no consequence that the whole of the plaintiffs' capital stock was not subscribed. It is insisted that no installments for the general purposes of the corporation can be called in until the whole capital stock is subscribed. (*Salem Mill Dam. Cor.* v. *Ross*, 6 *Pick.* 23. *Proprietors of Cabot Bridge* v. *Chapain, &c.* 6 *Cush.* 50.)

VIII. The referee erred in deciding that the change of the route of the proposed road was made in due form of law. (1.) The amount of capital stock of the company was $50,000; (see articles of association, fol. 12;) which stock consisted of 1000 shares, at $50 each. (2.) It is not pretended that more than 426 shares were ever subscribed. The amount of the subscriptions, therefore, was only $21,300—much less than one-half of the capital stock, instead of being two-thirds of the

Rensselaer and Washington Plank Raod Co. *v.* Wetsel.

same. (3.) By an act of 6th of April, 1849, (*Laws of* 1849, *p.* 374, § 1,) the directors may, with the written consent of the persons owning two-thirds of the stock, and with the written consent of the majority of the inspectors, construct branches, &c., or change the route of their road. (4.) It would follow of course, that inasmuch as two-thirds of the stock was never subscribed for or owned, the written consent of persons owning two-thirds of the stock could not be obtained. (5.) The truth is, and that appears by the case, that subscribers of only two-thirds of less than one-half of the stock gave their assent to the alteration. (6.) This alteration and division of the route is at issue by the pleadings, and the referee has erroneously decided that it was legally altered.

IX. The referee erred in deciding that the plaintiffs are entitled to recover the full amount unpaid upon the defendant's subscription. If it be true, as decided by the referee, that the right to sue for or forfeit the stock is elective with the company, it is insisted that the plaintiffs, before the commencement of this action, made the election to adopt the statute remedy of forfeiture in case of non-payment. The plaintiffs in effect say to the defendant, "pay, or in case you neglect we will forfeit your stock." Thus leaving the defendant to choose either alternative. He has chosen not to pay, and the plaintiffs are bound by the remedy they have proposed in such case, that is, to forfeit the defendant's stock, and all payments made thereon. (*Small* v. *Herk. Man. Co.* 2 *Comst.* 330.)

*M. L. Filley*, for the respondents. I. The subscription of the defendant being admitted, for 20 shares, at $50 a share, the law implies a promise to pay for the stock. (1.) The articles and the subscription were in precise conformity with the statute. The act authorizes the directors to " *require payment* of the sums subscribed to the capital stock." It provides also a *cumulative* remedy by the forfeiture of stock, and of any previous payments. It declares the stockholders to be individually liable for an equal amount of debts *over and above their stock*. It provides that the shares " shall be deemed personal property."

The value is designated by the articles, and he who buys impliedly promises to pay. (*Laws of* 1847, 216, §§ 1, 20, 39, 44, 47. 1 *R. S.* 579, § 14, *subd.* 5; 600, § 1.) (2.) The obligation and agreement to pay is implied from the subscription for stock. (*Northern Rail Road Co.* v. *Miller*, 10 *Barb.* 260. *Palmer* v. *Lawrence*, 3 *Sandf.* 161, 164. *Spear* v. *Crawford*, 14 *Wend.* 23. *Troy Turnpike Co.* v. *McChesney*, 21 *id.* 296. *Efner* v. *Shaw*, 2 *id.* 567. *Beene* v. *Cahawba Rail Road Co.*, 3 *Ala. N. S.* 660–67. *Instone* v. *Frankfort Bridge Co.*, 2 *Bibb*, 576, 578, 580. *Hartford and Newhaven R. R. Co.* v. *Kennedy*, 12 *Conn. R.* 500.)

II. The remedy by forfeiture is merely *cumulative*, and does not supersede the remedy by action. (*Troy Turnpike Co.* v. *McChesney*, *supra*. *Goshen Turnpike Co.* v. *Hurtin*, 9 *John.* 217. *Mann* v. *Currie*, 2 *Barb.* 294. *Northern Rail Road Co.* v. *Miller*, 10 *Barb.* 260, 271.)

III. It was immaterial whether the whole amount of capital stock had been subscribed or not, at the time payment was required. (*Laws of* 1847, *p.* 217, § 2. *Hamilton Plank Road Co.* v. *Rice*, 7 *Barb.* 166, 7.)

IV. The defendant failed to sustain the allegation that the directors fraudulently changed the route of the road. (1.) This court decided at special term, upon the precise facts presented, not only that there was no fraud on the part of the directors, but that the change was properly and legally made. (2.) The articles do not, and are not required to define the precise route. The general description is equally applicable to the eastern and the western route. A change of route was authorized by the act of 1849, with the consent of the owners of two-thirds of the stock, and of the local inspectors. No joint commission of the inspectors of the different counties was contemplated. The authority of the inspectors respectively was limited to their own counties by the 34th section of the act of 1847. The change of route was within the county of Rensselaer, and was made with the written consent of the local inspectors, and of the owners of 302 shares of the 446 shares subscribed. (*Laws of* 1847, *p.* 214, §§ 1, 33, 34. *Id.* 1849, *p.* 374, § 1.) (3.) The liability of the

Rensselaer and Washington Plank Road Co. v Wetsel.

defendant upon his subscription was not dependent on the fidelity with which he and his associate directors managed the affairs of the company. That was a question between the corporation and the government. (*McFarlan* v. *Triton Ins. Co.*, 4 *Denio*, 392, 397. *Palmer* v. *Lawrence*, 3 *Sandf.* 162, 170. *The River Navigation Co.* v. *Neal*, 3 *Hawks*, 520.) (4.) The referee was clearly right in assuming that there was no irregularity in this respect, and when the case was submitted, the point was abandoned, by placing the defense exclusively on other grounds.

V. The material facts were not merely proved, but admitted by the pleadings. (1.) No objection was made to the introduction of the articles, on the ground that the execution by the defendant was not proved; and the allegation in the complaint that they were subscribed by him was not denied in the answer. (2.) There was no denial of the allegation that the directors on the 22d of October, 1850. required payment of the subscriptions on or before the 24th of November. (3.) The service of notice of the requisition, was not only proved, but admitted.

VI. There was no error in permitting the introduction of the articles of association, which are admitted by the pleadings. (1.) The objection that the articles as proved and admitted, varied from the " original articles," was unfounded. The name of Mr. Van Veghten was erased before the original articles were filed, as shown not only by the proof, but by the certified copy of the articles. (2.) The objection that the erasure, if it discharged Van Veghten, vitiated all the subscriptions, is equally unfounded. The defendant cannot go behind the articles to assail the organization. Those subscriptions alone took effect which were attached when the articles were filed. The erasure was at the instance of the directors, of whom the defendant was one, and was made in his presence, " by general consent." The defendant not only authorized. but affirmed it. He acted as a director under the articles and the affidavit subjoined, from the organization of the company to 24th November, 1850. He paid in part for his stock, and on the 3d of June, united with the other directors in rescinding the Stillwater resolution.

VII. The defendant is concluded by the finding of the referee

upon the facts. (*Durkee* v. *Mott*, 8 *Barb.* 423. *Ludington* v. *Taft*, 10 *id.* 447, 453. *Gilbert* v. *Luce*, 11 *id.* 91.)

*By the Court*, PARKER, P. J. I see no reason for questioning the correctness of the decision of the referee in receiving in evidence the certified copy of the articles of association. It was a correct copy of the articles as they were when filed. Nor can it at all avail the defense that William Van Veghten had originally subscribed for ten shares, and that the subscription was erased before the articles were filed. I agree with the referee that it is fairly inferable, from the evidence, that the erasure was made with the knowledge of the defendant, and of all the directors, and at Van Veghten's request. The evidence also shows that it was not done with any fraudulent intent.

The subscription by the defendant for twenty shares of stock is alleged in the complaint, and I think is substantially admitted in the answer. The denial at first attempted to be made in the answer is somewhat qualified, and hardly sufficient; but the defense set up in a later part of the answer is, the alteration of the route "since this defendant subscribed the said articles of association." If, however, there were any doubt as to the admission, the proof seems to supply the defect. It was shown by the certified copy of the articles that a subscription for twenty shares was made in the name of the defendant; and it was proved by the secretary and treasurer that the signature was recognized by the defendant as genuine, by his paying the five per cent on the stock and acting with the board of directors.

It is too late now to question the doctrine that, on a subscription for stock, there is an implied promise to pay for it. The remedy for non-payment is not confined to a forfeiture of the stock, though such a remedy is expressly given by the statute. (*Sess. Laws* 1846, *p.* 216, § 39. 3 *Sand.* 161. 2 *Wend.* 567. 14 *id.* 23. 21 *id.* 296. 3 *Ala. Rep.* 660. 2 *Bibb*, 576. 12 *Conn. Rep.* 500.) In addition to these there have been cases decided by this court under the act in question, which are not yet reported. The remedy by forfeiture is merely cumulative.

Nor was a subscription to the full amount of the stock named

in the articles as the stock of the company, a condition precedent to the recovery. (*Hamilton Plank Road Co.* v. *Rice*, 7 *Barb.* 166, 167. *Laws of* 1847, *p.* 217, § 2.)

The allegation in the complaint that the directors, on the 22d of October, 1850, required payment of the sum subscribed, on or before the 24th of November, 1850, was not denied in the answer, and was therefore admitted. And it was in the same way admitted by the pleadings, and was also proved, that notice of the payment thus required and of the time and place when and where the same was to be made, was duly given to said defendant, in the manner prescribed by the act.

The defendant failed to sustain his allegation that the directors fraudulently changed the route of the road. The change appears to have been properly and legally made, and was within the description contained in the articles of association.

The judgment on the report of the referee should be affirmed.

[ALBANY GENERAL TERM, September 3, 1855. *Parker, Wright* and *Watson,* Justices.]