Allen, J., (dissenting.)
The plaintiff’s right to recover must, I think, depend upon the validity and sufficiency of the proceedings for their incorporation under the general act of 1850. The question is upon the validity of the contract alleged to have been made by the intestate by his subscription on the 8th of June, 1853; and the tests of its validity must be applied as of that date. There is no evidence that he did anything, after that time, recognizing the existence of the corporation, and up to that time there had been no user of the franchise which would estop any one from disputing the corporate existence of the plaintiff. All that had been done under the articles of association was, that the persons named as directors had come together and chosen from their number a president, secretary, treasurer and other officers. This was in no sense a user of any corporate-franchise extended to the body *71 as a corporation by the laws of the State. By thus getting together, calling themselves a corporation and electing officers, they did not become a corporation quoad third persons and the people, so that their corporate existence could only be questioned by the Attorney-General upon a quo warranto. Had they, on the 2d day of June, 1853, brought an action as a corporation, no one would claim that this formal election of officers was such a user of a corporate franchise as to constitute them a corporation de facto. And yet that was all there was when the plaintiff subscribed; and if they w:ere not then a corporation, either de jure or de facto, the contract was invalid, and the subsequent acquisition by the plaintiff of certain corporate rights, as against third persons and the public, by usurpation, could not inure by relation to establish a contract against an individual having no subsequent concern or 'dealing with the Company. A single act in the exercise of the franchise ■ claimed would not be a user, within the rule that makes a user evidence of corporate existence; still less is the preparation to enter upon the user sufficient to establish the existence of a corporation. The user of a corporate franchise has never, so far as cases have come to my notice, been relied upon or regarded as evidence of corporate existence in actions up*n subscriptions to the capital stock. Indeed it could not be, for the reason that contracts of that character are incident to the creation of the corporation. In some cases a person dealing with a corporation is estopped from denying its existence. (Angell & Ames on Corp., § 94.) But in this court, as well as in other courts, in actions upon subscriptions to the capital stock, the question of the creation and existence of the corporation has been regarded as an open question, and the subscriber has not been concluded by his subscription. The questions made in the cases that have been before this court would have been very easily disposed of, had the doctrine of estoppel been deemed applicable; and the fact that the proceedings for the incorporation have been- examined and cases disposed of upon the merits, is very high evidence that the subscriber is at liberty *72 to controvert the existence of the corporation. (Eastern Plankroad Co. v. Vaughan, 14 N. Y., 546; Buff. and Pittsburgh R. R. Co. v. Hatch, 20 id., 157.) There is good reason why the party should not be held to have admitted the existence of the corporation by his subscription. The consideration of his undertaking is the shares of stock which he receives, or expects to receive, from the corporation. If the company has not been legally incorporated, the stock, as such, is of no value: it has no existence. He agrees to pay for what he cannot get, and hence his promise is nudum pactum. It was decided, in The First Baptist Society v. Rapalee (16 Wend., 605), thát a promise in writing to pay a certain sum to the trustees of a certain church did not estop the promisor from requiring proof, or, in other words, from denying the incorporation of the church. (Welland Canal Co. v. Hathaway, 8 Wend., 480; Central Turnpike Corporation v. Valentine, 10 Pick., 142; Proprietors of Norwich and Lowestaff Navigation v. Theobold, 1 Mood. & Malk., 151; Schenectady and Saratoga Plankroad Company v. Thatcher, 1 Kern., 102; Rensselaer and Washington Plankroad Co. v. Wetsel, 21 Barb., 56; Hamilton and Deansville Plankroad Co. v. Rice, 7 id., 157); all of which, with the exception of the first, were actions upon stock subscriptions, and in all of which th% question of the proper organization ánd incorporation of the plaintiff was made by the defendants and considered by the court. Valk v. Crandell (1 Sandf. Ch., 179,) was the case of a subscription intermediate an irregular organization of a banking association, by a certificate not in conformity with the statute, and a formal perfect organization by filing a certificate as required by law, and it was held that the subscription and the mortgage given as security were void. It does not need the citation of authority to the proposition that a party, seeking to avail himself of a special privilege or franchise under a statute, must bring himself strictly within the terms of the act, the benefit of which he seeks. The principle is elementary. The statute authorizing the creation of corporations, by the voluntary association of individuals for that purpose, must be strictly pursued. A compliance with *73 the statute is a condition precedent to the existence of the corporation. No act required by the statute as a preliminary to the formation of the corporation can be omitted as non-essential. In The Eastern Plankroad Company v. Vaughan (supra), stress was laid upon the fact that the documents mentioned and called for by the statute contained all that was, in terms, required to be inserted in them; thus conceding that any departure from the statute, in omitting to comply with a positive requirement, would have been fatal. In Buffalo and Pittsburgh Railroad Company v. Hatch (supra), judgment was given for the plaintiff, for the reason that there was a substantial compliance with the statute in all respects; and the same remark applies to the case of The Schenectady and Saratoga Plankroad Company v. Thatcher. It is only on compliance with the provisions of this act that the articles of association may be filed in the office of the Secretary of State, and the associates become a corporation. (Laws of 1850, p. 211, § 1.) Section 2 of this act forbids the filing and recording of the articles of association and the incorporation of the associates, until there is indorsed upon or annexed to such articles an affidavit, made by at least three of the directors named in the articles, stating, among other things, that. “ it is intended in good faith to construct or to maintain and operate the road mentioned in such articles of association.” This is omitted in the affidavit filed with the plaintiff’s articles of association. The statute required some evidence of the good faith of the associates, and prescribed this as the evidence to be presented. When the legislature parted with their discretion and supervisory control in the matter of creating railroad corporations, it was fit and proper that the public should, so far as was practicable, be protected against fraudulent or speculative organizations under the general act, and hence the requirement of not only the subscription and payment of a given sum per mile of the proposed road, but an affidavit of the bona fide intent to carry into effect the object of the proposed corporation. The omission of this part of the required affidavit was fatal to the proceedings for the incorporation of the plaintiff. It *74 was so regarded by the plaintiff and by' the legislature, and hence the act of 1858 was passed. That act legalized the acts of the corporation from the first, and to some extent and for some purposes gave them the saíne rights as against third persons and the public which they would have had if the proceedings for their incorporation in the first instance had been perfect and regular. But the act could not have a retroactive effect so as to give vitality to an executory contract with a stranger void in its inception, for the reason that there was no corporation capable of contracting. If the intestate was not bound by his promise when made, no subsequent act of the .legislature could'create a liability. The legislature can neither make nor unmaké contracts for parties. The Constitution, as well as the well defined limits of legislative power, aside from the express prohibition of the Constitution, forbid this.
The judgment should be reversed and a new trial granted, costs to abide event.
Sutherland, J., also dissented; Selden, J., expressed no opinion.
Judgment affirmed.