The Hamilton and Deansville Plank Road Co. *v.* Rice.

---

Same Term. *Before the same Justices.*

The Hamilton and Deansville Plank Road Company *vs.* Rice.

7b   157
171 NY ³496

The assignor of a chose in action, which is assigned for the purpose of making him a witness, is not rendered incompetent to testify, by the provisions of the 352d section of the code of 1848, if he is not interested in the event of the suit.

The rule is still the same as it previously stood at common law, viz. that in a suit by a corporation an owner of stock in the corporation may, by assignment, divest himself of all interest in the event of the suit, and thus become a competent witness.

The Hamilton and Deansville Plank Road Co. *v.* Rice.

In an action by a plank road corporation, against a stockholder, to recover the amount of calls made upon the stock held by him, the books of the corporation are admissible in evidence, to prove the resolutions calling for payment of the several installments upon the subscriptions for stock.

It is no objection to the validity of a subscription to the capital stock of a plank road company that it was made upon a separate paper, which only a portion of the stockholders had subscribed; there having been several similar papers used, in lieu of the *books* required by the act to be opened in different places, for subscriptions.

Nor is it any objection to the validity of such a subscription, or to the right of the company subsequently organized to maintain an action upon it, that, at the time it was made, there was no company in existence.

All the cases which have held subscriptions of stock void are based either upon the supposed want of necessary parties to the agreement; of a sufficient consideration to uphold it; or of a sufficient promise expressed in it. *Per* GRIDLEY, J.

In the case of moneys subscribed for charitable purposes—embracing donations for religious and literary institutions—it has been held that there is no necessity of a personal, pecuniary, benefit to be derived by the subscriber. But in the case of a manufacturing, or plank road, or turnpike, or money corporation, the rule is different. The advantage to be derived from being a member of such a company, and of the consequent right to participate in the pecuniary dividends, is a positive benefit; and when the agreement secures that advantage to the subscriber, the objection of a want of consideration can not be made, with success.

Where an agreement, by which the parties thereto promise to take specified portions of stock in a proposed plank road company, not only bears upon its face the evidence of a consideration, founded on the pecuniary advantage of membership, but also upon the mutual promises of the several subscribers, such mutual promises constitute the consideration. And if the promise is to pay the subscriptions, to the corporation to be thereafter organized, the fact that the promise is to pay a third party, can not be successfully urged in defense to an action by the company, against a subscriber, to collect the calls upon his stock.

Although an agreement, to take stock in a plank road company proposed to be organized under the general plank road act, contemplates a company whose capital stock shall be a specified sum, a subscription to the full amount named is not a condition precedent to the right of the company to recover upon such agreement.

And where a subscriber agreed to become a member of a proposed company, as soon as the amount of stock required by the plank road act should be subscribed, and to pay the amount of his subscription when the company should be organized; *Held* that as soon as stock to the amount of $500 for every mile of the road was subscribed, and five per cent paid in, and the company organized, he was liable to be sued by the company for the installments due upon his subscription.

The Hamilton and Deansville Plank Road Co. v. Rice.

A subscription to the articles of association of a plank road company is not an act indispensable to membership in the company.

A subscription to any legal and valid instrument, by which a party engages to become a member of a company, when organized, and to pay a given sum, which is to be a part of the capital stock, followed up by an acceptance of a certificate for the stock, will make such subscriber a member of the corporation.

The acceptance of a stock certificate is a waiver of any informality that may have intervened, short of an absolute defect of jurisdiction.

And such acceptance of a certificate will lay a foundation for a recovery against the subscriber, by the company, for the amount of the stock subscribed, under a count for money paid.

When a *deviation* of the site of a plank road from the route prescribed in the articles of association, will be considered allowable, under a fair interpretation of the word " *near,*" and as being within the discretion of the company.

THIS was an action of assumpsit, brought against the defendant upon his subscription for $200 to the capital stock of the plaintiffs' company, to recover the amount of three several assessments made upon the stock owned by the defendant. The declaration contained four special counts, and a fifth consisting of the usual money counts condensed; to which was added a count upon an *insimul computassent.* The defendant pleaded the general issue, and gave notice of special matter. The cause was tried at the Madison circuit, in February, 1849, before Justice GRIDLEY; when a verdict was taken for the plaintiff, subject to the opinion of the court, upon a case.

*Mr. Goodwin,* for the plaintiffs.

*J. B. Eldridge,* for the defendant.

*By the Court,* GRIDLEY, J. This is an action to recover the amount of several calls, for installments upon a subscription for the stock of the company. The declaration contained the common counts in indebitatus assumpsit, and also several special counts, framed upon a subscription paper which was proved to be the paper used as a substitute for a book at one of the places, where the books for subscribing to the stock of the road were opened, pursuant to the notice contained in the first sec-

tion of the act providing for the incorporation of plank road companies. (*Sess. Laws of* 1847, *p.* 216.) By the terms of the instrument, the subscribers contracted and mutually agreed, each with the other, to form themselves into a company, for the purpose of constructing a plank road from the village of Hamilton to Deansville, by the way of Bouckville, Solsville and Oriskany Falls, to be known by the name of the "*Hamilton* · *and Deansville Plank Road Company*," with a capital stock of twenty-six thousand dollars, the company to be organized according to the directions of the act, &c. as soon as the amount of stock required by the act could be subscribed. The paper then proceeds in the following words: "We the undersigned do severally agree, for and in consideration of the benefits to be derived from becoming members of said company, and of obtaining the benefits thereof, agree to pay to the said company when organized the several sums set opposite our names, to be paid to the directors of the company, for the purpose of constructing a plank road from Hamilton to Deansville, &c.; said subscriptions to be parts of the capital stock of said company. Hamilton, Dec. 13, 1847."

Upon the trial, the plaintiffs proved the subscriptions of the stock by the defendant and others, upon the opening of the books pursuant to notice duly given and published; the adoption and execution of the articles of association, signed by a large number of persons whose subscriptions amounted to considerably more than $500 to the mile, and the payment of over five per cent on the amount so subscribed, and the filing of the articles, with the affidavit required by the first section of the act annexed, in the office of the secretary of state, in the month of January, 1848. It further appeared that after this the capital stock actually taken was increased to $19,000, though it had never been filled to the amount of $26,000, the sum named in the articles as the amount of capital stock of the corporation. The company, after its organization commenced operations, completed and filed its survey, and expended on the faith of the subscriptions a large amount of money. The defendant never signed the articles of association, but he was put down in the

The Hamilton and Deansville Plank Road Co. *v.* Rice.

books of the company as a stockholder to the amount of his subscription, and after the work had been commenced and considerable money expended, his certificate of stock was made out and delivered to him, and he accepted it. When afterwards called on for his five per cent, he at one time replied that he expected to sell his stock, to a person named by him, and on another occasion he said that it was not then convenient to pay it. The calls were duly proved, as well as the ultimate refusal of the defendant to pay for the stock. After one or two exceptions to the admission of evidence, it was agreed by the counsel that a verdict should be taken for the plaintiffs, subject to the opinion of the court on a case to be made, upon the points raised by the defendant on a motion for a nonsuit.

The exceptions taken to the admission of evidence, were probably waived by the agreement to allow a verdict to be taken subject to the opinion of the court. But, inasmuch as they would, if well founded, strike out of the case much of the ground on which the plaintiffs' right to recover rests, we will proceed to consider them. The first was an exception to the ruling of the court in admitting Philander Barker to be sworn as a witness. Barker had been a stockholder in the road, but some days before the trial he had transferred his stock and received a note for it, at the suggestion of the plaintiffs' attorney, without inquiring into the reason of the suggestion, and without any view of becoming a witness. The attorney, however, testified that it was his object in advising the transfer to make Barker a witness. Upon this evidence the counsel of the defendant objected to the competency of the witness, not on the ground that he was still interested; but on the ground that he was the assignor of a thing in action assigned for the purpose of making him a witness, under the provisions of section 352 of the code of 1848. The judge held, and we think correctly, that, if the witness was not interested, in the event of the suit, the provision in question did not render him incompetent. The section declares, not that such an assignor shall be incompetent, but merely that the 351st section shall not apply to him. The latter section provided that no person should be excluded by reason of his interest

in the event of the action. The true interpretation of the statute, therefore, is that a witness who has assigned a thing in action, for the purpose of being a witness, if he remain interested in the event of the suit, can not be examined as a witness. An interest in the event of the suit, was formerly a disqualification of a witness. The 351st section abolished that disqualification, as a general rule. But the 352d section excepted from the application of such general rule the case of an assignor who assigned his interest in the subject matter to become a witness. The case, therefore, is left as it stood at common law, and by the common law rule the owner of stock might, by assignment, divest himself of all interest in the event of the suit, and become a competent witness.

In a subsequent stage of the suit the plaintiff offered the books of the company in evidence, to prove the resolution calling for payment of the several installments upon the subscriptions for stock. To this evidence the defendant objected. The court admitted the books, to show that the corporation had taken the requisite steps to make the defendant liable, and to the admission of the books for that purpose there was no further objection. Those decisions at the circuit we believe to be correct. We come now to the consideration of the grounds on which the defendant moved for a nonsuit, and upon which he now claims that he is entitled to judgment. The grounds stated by the defendant are eight in number; but they may be embraced in two general propositions.

I. That the agreement which the defendant signed was void, for the reason that it was executed before there was any company in existence. That it purports to be an agreement between the original signers alone; and can not be extended by parol evidence; that it was not mutual, the company not being bound by it; that it does not run to the company.

On the particular paper to which the signature of the defendant was attached, there were only the names of ten subscribers. But this paper was only one of the several books which were opened pursuant to notice, under the act; and the defendant's counsel insists upon too narrow and technical a view of the

The Hamilton and Deansville Plank Road Co. *v.* Rice.

contract when he seeks to construe it as an agreement that the signers of *that paper* alone should constitute the contemplated company. The defendant is chargeable with a knowledge of the provisions of the act, and he therefore was bound to know that the books were opened at other places on the route, and that the number of stockholders was not confined to such as should subscribe, either one or all of the books opened for subscription, or to those who should sign the articles of association, but that the number might be increased, after the filing of the articles, until the entire amount of the capital stock should be subscribed. It has been said that this subscription paper is not a book. True, it is not literally a book; but it has served the purpose of one, and the rights of the corporation can not depend on the fact, that, when the books, in the language of the act, were opened for subscription, and the subscribers placed their names to an instrument stating the objects and conditions of the subscription, such instrument was written on a single sheet instead of a sheet bound up with a hundred others. The argument, therefore, which is founded on this technical view of the agreement, must be rejected as hypercritical. We think, too, that the fact that the corporation was not *in esse* when the agreement was signed, is not, of itself, a sound objection to the right of maintaining an action upon it. This point is decided in the case of *Stanton, President of the Exchange Bank, v. Wilson,* (2 *Hill,* 153.) In that case the defendant signed the articles of association, and subscribed before the organization of the corporation, but the court held that this fact formed no objection to a recovery. The action was brought in the name of the president, and the court say, "It is true the company did not come into existence till several months after the defendant's subscription purports to have been made, and the power of the president to sue did not arise till that time. The contract, though dated before, must be considered as taking effect only on the first of January. In that case there was no corporation *in esse,* to be *bound by,* or *to exact obedience to,* the agreement which the defendant subscribed, at the time when he placed his signature to the paper. Another case which is decisive upon

this point, is that of *The Trustees of Farmington Academy* v. *Allen*, (14 *Mass. Rep.* 172.) The defendant, with others, signed a paper, reciting that an academy in Farmington was rendered necessary by reason of the distance of that town from other institutions of the kind, and that it was also necessary to raise funds before the necessary assistance from the legislature could be obtained; therefore the subscribers agreed to pay such sums as they should subscribe, to the persons to be appointed trustees by the legislature. The defendant, having paid a part of his subscription, and the trustees having gone on to make expenditures, and subsequently the defendant refusing to pay the residue of his subscription, was sued, and the suit was held to be well brought, and a verdict was sustained notwithstanding there was no corporation *in esse* when the promise was made.

All the grounds of objection arising under the propositions we are now considering, are based on the supposed want of sufficient parties to the agreement, or of a sufficient consideration to uphold it, or of a sufficient promise expressed in it. All the cases which have held subscriptions of stock void, have gone upon one or the other of these grounds. The case of *The New Bedford Turnpike Company* v. *Adams*, (8 *Mass. Rep.* 138,) where there was a mere subscription for stock, without any promise to pay, and the only remedy provided by the act of incorporation being the forfeiture of the stock, was placed on the distinct ground that there was no obligation to pay created by the subscription, and there being no promise, that the act contemplated a forfeiture only. In the *Essex Turnpike Co.* v. *Collins*, (8 *Mass. Rep.* 292,) a corporation had been organized to construct a road from a certain point to Boston; and a certain person named Foster, procured the defendant to subscribe a paper to pay a certain sum, with the view of having the road extended to Salem; and although there was evidence that the directors met, afterwards, and resolved to extend the road to Salem, yet there was no proof that Foster was the agent of the company, or that the company had any knowledge of his acts. The agreement was held void for want of either parties or consideration. The case of the *Phillips Limerick Academy* v. *Davis*,

The Hamilton and Deansville Plank Road Co. *v*. Rice.

(11 *Mass. Rep.* 113,) was another case in which the court held that there was no sufficient consideration. It is indispensable to a consideration that there should be either some advantage to be enjoyed by the promiser, or some damage or loss incurred by the promisee. In the case of moneys subscribed for charitable purposes, which embrace donations for religious and literary institutions, it has been held that there is no necessity of a personal pecuniary benefit to be derived by the subscriber; but in the case of a manufacturing, or plank road, or turnpike, or money corporation, the rule is very different. The advantages to be derived from being a member of such a company, and of the consequent right to participate in the pecuniary dividends, is a positive benefit; and when the agreement secures that advantage to the subscriber, on the organization of the company, the objection of a want of consideration can not be made, with success. It was repudiated in the case of *Stanton* v. *Wilson.* Again; the agreement under consideration not only bears on its face the evidence of a consideration founded on the pecuniary advantage of membership, but also upon mutual promises expressed as clearly as words can speak. (*See the opinion of the chancellor in Stewart* v. *Hamilton College,* 2 *Denio,* 417.) The mutual promises of the several subscribers constitute the consideration, but the promise is to pay the subscriptions to a third party, viz. the corporation to be thereafter organized. That there is no tenable objection founded on the fact that the promise is to pay a third party, is established by the decision in the case of *Barker* v. *Bucklin,* (2 *Denio,* 45.) And that the promise is valid and binding, notwithstanding the party to whom the payment is to be made is a corporation not then in existence, but to be formed thereafter, we have proved by the cases of *Stanton* v. *Wilson,* and *The Farmington Academy* v. *Allen,* before cited.

A suggestion is made in the written argument furnished us, that the declaration is not properly framed to enable the plaintiff to recover upon the ground of a consideration founded on mutual promises. We can not say how that may be. The declaration is not set out in *hæc verba* in the case; but it is

stated that the fourth count was framed on the agreement, "*with all the necessary averments to charge the defendant.*" If then the averment respecting the consideration founded on mutual promises was necessary to charge the defendant, we must assume that the declaration contained it. There is, however, another conclusive answer to this suggestion. The objection was not made on the trial. If it had been then made, the amendment would, under the liberal provisions of the code, have been allowed on the spot; unless the defendant had proved by his oath that he had been misled by the variance.

II. The second general proposition on which the defendant objects to the plaintiff's right of recovery is embraced in his last three points, and is founded on the idea that inasmuch as the agreement signed by the defendant contemplated a company whose capital stock should amount to $26,000, a subscription to the full amount of the sum named was a condition precedent to the right to recover. This is an error into which the counsel has fallen from not having carefully read the first sections of the plank road act. It is true that such a result will follow, where the subscription of a certain amount of stock is made a condition precedent by the terms of the act of incorporation. It was so held in the 6 *Pick. Rep.* 23; 10 *Id.* 142; and 9 *Id.* 187. It will be found, however, upon examination, that in each of these cases the condition was created by the act itself. The act under which this corporation was organized, provides that "when stock to the amount of at least $500 for every mile of the road so intended to be built shall be in good faith subscribed, and five per cent paid thereon," &c. the said subscribers may elect directors, execute their articles and file them in the office of the secretary, from which time they are a legally organized corporation. This result is accomplished before the entire capital stock is subscribed, and generally before one fourth part is subscribed. The sum of $500 is scarcely a fourth of the cost per mile of the cheapest plank roads constructed in this country. In the case before the court, it appears that the road is 15 miles in length, that it was somewhat more than two thirds done, and that the expenditure had already amounted to about $20,000.

Again, by the very terms of the agreement which the defendant subscribed, he stipulated to become a member of a company to be organized, not when the whole capital stock should be subscribed, but "*as soon as the amount of stock required by the said act should be subscribed,*" and to pay the amount of his subscription when the company should be organized. This objection, therefore, is without foundation.

III. We have already seen that a subscription to the articles of association can not be an act indispensable to membership of the company. For the articles are filed in the office of the secretary when, ordinarily, less than one third of the amount is subscribed. A subscription to any legal and valid instrument, by which a party engages to become a member of the company when organized, and to pay a given sum which is to be a part of the capital stock, followed up by an acceptance of a certificate for the stock, will make such subscriber a member of the corporation. The acceptance of the stock certificate is a waiver of any informality that may have intervened, short of an absolute defect of jurisdiction. In a case far less strong than this, the supreme court of Massachusetts held that the corporation might recover against a subscriber the amount of his subscription, under a general count for money paid at the defendant's request. In the 14*th Mass. Rep.* 172, before cited, the defendant, when called on for his subscription, said he had no money, but would deliver as part payment a quantity of shingles, which he accordingly did, and the same were received and used by the trustees. This was held by the court to have been such a recognition of his promise, and such an implied request to the trustees to proceed on the faith of that promise and expend money, relying upon its performance, that after they had actually expended the money, he was liable for the money so expended, to the amount of his subscription. If that case be law, then *a fortiori* will the acceptance of the certificate of stock by the defendant in this case lay the foundation for a recovery under a count for money paid.

IV. A map of the survey of the road is appended to the case to show how far the site of the road deviates from the route pre-

The Hamilton and Deansville Plank Road Co. *v.* Rice.

scribed in the articles of association. The route is thus described in the 12th article—"Thence on *or near* the highway laid out on the line of the Chenango canal through Bouckville, Solsville and Oriskany Falls," &c. The map shows a deviation from the highway thus designated, near Solsville, by which the plank road is carried round on the east side of a mill pond and a swampy piece of ground, instead of passing the west side, by which deviation it is apparent that the distance is somewhat shortened. Without such apparent reason for a departure from the exact route of the road laid out on the line of the canal, we would presume that the deviation was adopted for good cause, and we should regard it as within the true construction of the term "*near*" such route; as that term is always relative. The cases of *The People* v. *Collins*, (19 *Wend.* 58;) *Hallock* v. *Woolsey*, (23 *Id.* 328;) *The People* v. *Denslow*, (1 *Caines*, 177;) and *Griffin* v. *House*, (18 *John.* 397,) show that the deviation was allowable under a fair interpretation of the word "near," and was within the discretion of the company.

The money having become due, and the defendant liable to pay it, and the amount being a sum certain, the allowance of interest was right. Upon the whole case, we are satisfied, that the plaintiff should have judgment on the verdict. No rule of law has been violated, and so far as the testimony furnishes any basis for a just conclusion, the defendant had no justifiable ground for his defense of the action.

Judgment for the plaintiffs.