THE PEORIA AND ROCK ISLAND R. R. Co. v. PRESTON.

1. Corporation: RAILROAD : POWER TO LEVY ASSESSMENTS ON STOCK. Where the charter or act of incorporation fixes the amount of capital stock of the corporation, no assessment can be made upon the shares of a stockholder until the full amount of stock is subscribed, unless a contrary intention appears, expressly or by implication, either from the charter or the contract of subscription.

2. —— Where by the charter or articles of incorporation of a railroad company, an organization and the election of directors and officers were provided for, upon $100,000 of stock being subscribed, the capital stock being $1,000,000 ; and where it was further provided that such directors should thereupon re-open the books and continue to receive subscriptions until the whole amount of the capital stock should be subscribed, and that "all subscriptions to the stock

of said company shall be paid at such times, in such amounts and on such conditions as said directors may prescribe," it was *held*, that the latter provision respecting the times and terms of payment had reference to the time when the full amount of the capital stock should have been subscribed, and that an assessment upon the shares of stockholders, ordered to be made before such period, was unauthorized and invalid.

3. —— AMENDMENT OF CHARTER. An amendment of the charter or act of incorporation which merely enlarges the powers of the corporation, without materially changing its original purposes, will not release a stockholder from his original obligation.

*Appeal from Scott Circuit Court.*

WEDNESDAY, SEPTEMBER 18.

ACTION to recover of defendant a subscription of five shares to the capital stock of plaintiff, amounting to $500.

The answer: 1. Denies each allegation of the petition. 2. Avers that by the act under which said plaintiff was incorporated, passed by the legislature of Illinois, March 7, 1867, and annexed as an exhibit to the answer, the capital stock of said company is fixed at $1,000,000, and that the directors are required to receive subscriptions therefor until the whole amount of capital stock shall be taken. That at the time the calls for payments were made by the directors as alleged in the petition, the said amount of $1,000,000 had not been subscribed for. Wherefore the directors had no authority under said charter to make calls for payments on subscriptions beyond five per cent required to be paid at the time of subscription; and calls so made were null and void. 3. That the sum of $100,000 had not been subscribed to the stock when the board of directors was elected, nor when the calls for payments were made, therefore said calls were illegal, and said election of directors null and void. 4. Denies that due notice of any of the calls for payments was given thirty days previous to the time when either of such payments was required to be made, by publication

in such newspapers, and for such time as said directors had determined, as required by said act of incorporation. 5. Avers that on March 10, 1869, after defendant had subscribed for stock as alleged in petition, the legislature of Illinois passed an act, a copy of which is attached to the answer, amending the act of incorporation of said company, thereby essentially changing the purpose and enterprise for which said corporation was originally incorporated, and that said company was authorized to construct a different line of railway, one terminus being fixed by said act at the city of Muscatine, and the other left indefinite. That said alteration of said charter was never assented to by defendant, but that defendant, being a citizen of Davenport, was induced to subscribe for stock wholly for the promotion of the trade and prosperity of his said place of residence, by the construction of said railway from Peoria to Rock Island, and that by constructing said road to Muscatine his motive in subscribing would be defeated, etc. The other portions of the answer and the amendments thereto are not necessary to an understanding of the points ruled herein.

The plaintiff demurred "to the second section of the answer, because the subscription of $1,000,000 is not a condition precedent to calls for payment on stock, and because subscriptions of the entire capital is not necessary before calls can be made, unless so stated in the agreement, or in the act of incorporation. To the fifth section of the answer because it showed that the subsequent act passed has only extended the powers of the corporation, and not materially altered its object and intent."

The demurrer was sustained, and defendant excepted; jury trial on the remaining issues, verdict and judgment for plaintiff. Defendant appeals.

*Putnam & Rogers* and *James T. Lane* for the appellant.

*Grant & Smith* for the appellee.

DAY, J.—I. We regard it as settled by the weight of authority and reason, that where an act of incorporation

1. CORPORA-TION: railroad: power to levy assessments on stock.

fixes the amount of capital stock, and the number of shares into which it shall be divided, the corporation cannot make an assessment upon the shares of a stockholder, for the purpose of carrying on the general business of the company, until all the capital stock has been subscribed, unless, either expressly or by implication, a different intent appears in the charter, or in the contract of subscription. The reasons for this rule are to our minds unanswerable. If the capital stock is fixed at $100,000, divided into one thousand shares, the subscriber of one share agrees to bear the one-thousandth part of the expense incident to the enterprise. If one-half the capital stock shall be found sufficient to accomplish the purposes of the association, then his agreement is upon his share of $100 to pay $50. If, however, an assessment can be made upon his share, and the business of the association entered upon when but $50,000 of stock is subscribed, the stockholder is compelled to bear the five-hundredth part of the expense of the undertaking. Thus a contract is enforced against him which he never expected. And the same is true if an assessment can be made when any thing less than the whole amount of stock is subscribed. Besides, it is apparent that *some* amount of stock must be subscribed before assessments can be made. But if no provision is made in the charter, nor in the contract of subscription, there is nothing by which this amount can be fixed, unless it be the amount of capital stock which the corporation is allowed to hold. If an assessment can be made upon any less amount than this, there is just as much warrant of law for entering upon the business of the association, and making assessments upon stock when *one-hundredth*, as when

ninety-nine hundredths of the stock is subscribed. Again, a person called upon to take stock in an enterprise considers the things to be done and the amount pledged to their accomplishment. If the undertaking can be commenced, before the amount designated is secured, the means of finishing what is begun may never be obtained, and the amount expended may be lost.

This whole question underwent an exhaustive discussion in *Salem Mill-Dam Co.* v. *Ropes*, 6 Pick. 23, decided in 1827. We despair of being able to add any thing to the reasons there assigned. See, also, S. C., 9 id. 187. This case was followed, in Massachusetts, by *Turnpike Co.* v. *Valentine*, 10 id. 142, in 1830; by *Cabot & West Springfield Bridge Co.* v. *Chapin*, 6 Cush. 50, in 1850; by *Worcester & Nashua Railway Co.* v. *Hinds*, 8 id. 110, in 1851; by *Stoneham Branch Railway Co.* v. *Gould*, 2 Gray, 277, in 1854; in New Hampshire, in the *New Hampshire Central Railway Co.* v. *Johnson*, 10 Fost. 390, decided in 1855; in Maine, in *Penobscot Railway Co.* v. *Dummer*, 40 Me. 172, and in *Old Town Railway Co.* v. *Veazie*, 39 id. 571, both decided in 1855. See, also, *Littleton Manufacturing Co.* v. *Parker*, 14 N. H. 543, and *Contocook Valley Railway Co.* v. *Barker*, 32 id. 363.

These cases all hold the doctrine above announced, and settle the law in the three States named. We have not been referred to any well-considered case holding the contrary view.

In *Hamilton & Deansville Plank Road Co.* v. *Rice*, 7 Barb. 157, cited by appellee, the capital stock was fixed in the charter at $26,000, but the act of incorporation provided that when $500 per mile was in good faith subscribed and five per cent paid thereon, the subscribers might elect directors, execute their articles, and file them in the office of the secretary, and that from that time they should be a legally organized incorporation.

The agreement which the defendant signed obligated

him to become a member of the company as soon as the amount of stock required by the act of incorporation should be subscribed, and to pay the amount of subscription when the company should be organized. Under this agreement it was very rightly held that when $500 per mile was subscribed and the company organized, the subscriber should pay the amount of his stock. This was no more than an enforcement of the agreement according to its terms.

In *Rensselaer* v. *Wetzel*, 21 Barb. 56, the facts are somewhat different, but the whole case is based upon that of *Hamilton & Deansville Plank Road Co.* v. *Rice, supra*, the whole opinion upon this branch of the case being as follows : " Nor was a subscription to the full amount of the stock named in the articles a condition precedent to the recovery." Citing 7 Barb. 166. It is apparent that as an authority upon the general proposition, this case is entitled to but little, if *any*, weight.

In *Waterford, etc.,* v. *Dalbiae*, 4 Eng. Law and Equity, 455 ; S. C., 6 Welsby, Hurlston & Gordon, 443, the opinion is so meager that it cannot be ascertained that it conflicts with the views hereinbefore expressed, the whole case being disposed of in an opinion of less than three lines.

In the *Lexington & West Cambridge Railway Co.* v. *Chandler*, 13 Metc. 311, the act of incorporation provided, that the capital stock should not exceed 2,000 shares ; that the number of shares should be determined from time to time by the directors, and that as soon as 250 shares should be subscribed the company should proceed to construct and open their road. After more than 250 shares had been subscribed the directors voted to close their books. This, it was held, was in effect fixing the number of shares at that already subscribed, and a subscriber to the stock was held liable. This is fully in accord with the views before expressed : 1st. Because the articles of incorporation authorized the company to proceed to construct and open the road when 250 shares should be subscribed ; 2d. Under

the authorized vote of the directors fixing the number of shares at that subscribed, the whole stock was taken. In *Fry's Exr.* v. *Lexington & Big Sandy Railway*, 2 Metc. (Ky.) 314, the capital stock of the company was fixed at $1,000,000, but the charter provided that, whenever stock to the amount of $100,000 was subscribed, the company should organize *and go into complete operation.* In an action against a stockholder on an assessment it was held, that the petition must aver the subscription of $100,000. This case, also, is in harmony with the general views herein expressed.

In *Kennebec & Portland Railway Co.* v. *Jarvis*, 34 Me. 360, the amount of stock which the corporation might hold was not fixed in the charter, but by a vote of the corporation, and this is the ground of the holding that a stockholder may be made liable before all the stock is subscribed.

In *The Iowa & Minn. Railway Co.* v. *Perkins*, 28 Iowa, 281, the general question of the right of a corporation to collect assessments, until all the stock should be subscribed, was not decided, the defendant being held liable in view of the terms of his subscription.

The only case to which our attention has been called, apparently in conflict with the leading one in 6 Pick. 23, is that of *Schenectady Plank Road Co.* v. *Thacher*, 11 N. Y. 102. The opinion advances no reasoning in opposition to the Massachusetts cases, which it seems to misapprehend, and from the facts of which it seeks to distinguish the case in hand.

We feel warranted, therefore, both from authority and reason, in holding that when an act of incorporation fixes the amount of capital stock which a corporation may hold, no assessment can be made upon the share of a stockholder, until all the stock is subscribed, unless a contrary intention appears, expressly or by implication, either in the charter or the contract of subscription.

II. The next question which presents itself is as to the proper construction of the charter. Does it contain any thing evincing an intention that assessments may be made upon the shares, before the subscription of all the capital stock? Section 3 of the charter provides that the capital stock of the company shall be $1,000,000, and be divided into shares of $100 each. Section 4 of the act provides that the persons named as corporators shall be authorized to cause books to be opened for receiving subscriptions to said capital stock to the amount of $100,000; that each subscriber, at the time of subscription, shall pay to said commissioners the sum of $5 on each share by him subscribed; and that when the directors of said corporation shall have been elected, the commissioners shall deliver to them the amount of money received, and the books and papers belonging to the company. Section 5 vests the corporate powers of the company in a board of nine directors, and provides that they shall elect from among themselves a president and vice-president, and shall have power to appoint a secretary, treasurer and all other officers deemed necessary for the transaction of the business of said company, and to require such officers to give security for the faithful performance of the duties of their offices. Section 6 provides that the first election for directors shall be holden as soon as may be after the said $100,000 of stock shall have been subscribed.

Section 7 of the charter is as follows: "The directors shall have power, and are hereby required, to re-open the books to fill up the capital stock of said company, and shall continue to receive subscriptions therefor until the whole amount of such capital (not subscribed before said commissioners) shall have been taken; and shall also receive subscriptions to the additional capital stock of said company, should the same be increased by said directors, pursuant to the authority herein given, at such time and places as the directors may deem expedient; and all sub-

scriptions to the stock of said company shall be paid at such times and in such amounts, and on such conditions, as said directors may prescribe, under the penalty of the forfeiture of the stock and all previous payments thereon; and they shall give notice of the payments thus required, and of the place where and the time when the same are required to be paid, at least thirty days previous to the time when said payments shall be required to be made, by publication in such newspaper, and for such time as said directors shall determine."

These are all the provisions of the charter affecting the question under consideration. They contain nothing, it seems to us, evincing an intention that assessments may be made before all the capital stock is subscribed. The commissioners were authorized to open the books and receive subscriptions to the amount of $100,000, thus taking the initiatory steps toward the organization of the corporation. The charter requires five per cent of the subscription to be paid at the time of subscribing. It would be manifestly inexpedient to allow these commissioners, without any bond for the faithful performance of their duties, to take the entire subscription of $1,000,000, and receive five per cent thereon, amounting to $50,000. Prudence and even necessity required some organization of the company before all the capital stock was subscribed. Hence the charter provides that when $100,000 shall have been subscribed, directors shall be elected, who shall select from their number a president and vice-president, appoint a secretary and treasurer, and require them to give bond for the faithful discharge of their duties. The charter requires these directors to re-open the books, and to continue to receive subscriptions until the whole amount of the capital stock, not subscribed before the commissioners, shall have been taken. This duty is specifically enjoined upon them. A failure to perform it is a failure to observe the positive requirements of the charter. This section

contains nothing authorizing an assessment until all the
capital stock is subscribed.    True, it provides that the
subscriptions shall be paid at such times and in. such
amounts, and on such conditions, as the directors may
prescribe.    But this evidently means that when the com-
pany has so. far complied with the conditions of its charter
as to be entitled to subscriptions, then the directors may
prescribe the times and amounts and conditions of pay-
ment.    It surely does not mean that, notwithstanding the
requirement that the directors shall re-open the books and
continue to receive subscriptions until the whole amount
of stock is taken, they may nevertheless refuse to do so,
enter upon the construction of the road, and assess the
shareholders to the full value of their shares.    And yet it
*does* mean this, or no authority is conferred to assess until
all the stock is subscribed.    But two limits upon the
authority of the board of directors to do every thing neces-
sary to the accomplishment of the objects of the corpora-
tion, can legally be deduced from the charter.    The one is
when $100,000 of stock is subscribed; the other is when *all*
the stock is taken.    There is no logical ground upon which
the authority can be claimed to arise at any intermediate
point.    The former limit nullifies the provision of the
section *requiring* the directors to re-open their books and
fill up the stock.    Such a construction is not admissible.
It .follows, therefore, that the latter is the true limit.
'There is nothing at all unreasonable in this construction.
$1,000,000 of stock is certainly not a very extravagant sum
for the building of ninety miles of railroad, when it is
borne in mind that almost, if not quite, that sum would be
necessary for the ironing of the road alone.    Nor does this
construction place any impediment in the way of corpora-
tions.    It is quite easy for them to provide that operations
shall begin, and assessments shall be made when any
given amount of stock shall have been subscribed.    But
when the charter is silent upon the subject the court

cannot establish an amount, and say that when that is reached, the liability of shareholders shall attach. Such a course would be found to be as impracticable and unsatisfactory in its execution, as oppressive and unjust in its results. Courts enforce contracts, but do not make them. The charter construed in *Salem Mill-Dam Co.* v. *Ropes*, 6 Pick. 23, was in all essential respects like the one involved in this case.

Our conclusion is that the · charter does not confer authority to make assessments upon the shares of the stockholders until all the stock is subscribed, and that the demurrer to this portion of the answer was improperly sustained.

III. The amendment to plaintiff's charter, set up in the fifth section of the answer, authorizes plaintiff to construct and maintain a branch or lateral railway, from some suitable point on its main line, to a point on the Mississippi river, opposite the city of Muscatine in Iowa. It does not essentially change the original purposes of the incorporation. The incorporation is not relieved from the necessity of building a railroad from Peoria to Rock Island, as originally contemplated. The amendment merely confers enlarged powers and additional privileges upon plaintiff.

That it is not of such a character as to exonerate a subscriber to the stock from his obligation, the authorities abundantly show. See *Barrett* v. *Alton & Sangamon R. R. Co.*, 13 Ill. 504 ; *Peoria & Oquawka R. R. Co.* v. *Elting*, 17 id. 429 ; *Sprague* v. *Illinois R. R. Co.*, 19 id. 174 ; *Illinois R. R. Co.* v. *Zimmer*, 20 id. 654. The demurrer to this portion of the answer was properly sustained.

If, under this charter, the corporation should undertake the construction of a lateral branch largely increasing the cost of the enterprise, and bearing an undue proportion to the original undertaking, they might be enjoined from so

doing at the suit of a stockholder. And if such design should be accomplished, a stockholder might be released from liability. But the mere conferring of authority to build a lateral branch, without more, which is all that appears in this case, should not, in our opinion, have that effect. Other alleged errors, in the admission of evidence and the giving of instructions, were assigned and argued, but it is believed that the views herein expressed render a separate consideration of them unnecessary.

For the error before alluded to the judgment is reversed and the cause remanded.

Reversed.