THE BUFFALO & JAMESTOWN RAILROAD COMPANY, RESPONDENT, v. JOSEPHUS H. CLARK, APPELLANT.

THE SAME, RESPONDENT, v. ERIE L. HALL, APPELLANT.

THE SAME, RESPONDENT, v. HORACE H. GIFFORD, APPELLANT.

*Railroad company—when a subscription to its capital stock, made before its incorporation, is valid—when a subscriber is not released by its failure to complete the road—or by its sale on foreclosure.*

The defendant, a few days prior to the organization of the plaintiff under the general railroad act of 1850, signed an agreement in writing, by which the subscribers thereto, in consideration and for the purpose of becoming stockholders in the said company, agreed to take the number of shares of its capital stock set opposite to their respective names, and to pay for the same in such time and manner as required by the company. After its organization the plaintiff accepted the subscription of the defendant, and made an assessment of ten per cent. upon the amount so subscribed, which assessment was paid by the defendant.

In an action to recover the amount of certain other assessments subsequently imposed upon the stock,

*Held,* that the agreement of the defendant to subscribe to the capital stock of the company was valid and binding, though he did not sign the articles of associatiation, nor the subscription book kept by the company in pursuance of section 4 of chapter 140 of 1850.

*Erie & N. Y. City R. R. Co.* v. *Owen,* 32 Barb., 616, and *Troy & Boston R. R. Co.* v. *Tibbits,* 18 *Id.,* 297,—distinguished.

That the objection that the agreement was invalid, because the corporation was not in existence at the time it was made, was obviated by the fact that the corporation accepted the subscription after it was organized, and that the defendant ratified it by paying an assessment thereon, and that the subscription should be regarded as having taken effect at the time of such acceptance and payment.

What acts of a corporation amount to an acceptance of such a subscription, considered.

The articles of association contemplated a road from the city of Buffalo, through the counties of Erie, Cattaraugus and Chautauqua to a point in the State line in the southerly boundary of the latter county. The road had been built from Buffalo to a village in Chautauqua county, distant some fourteen miles from the State line, and its further construction abandoned. It did not appear that the abandonment was effected by a resolution of the board of directors or by any alteration of the articles of association, or that it was anything more than a mere cessation or suspension of the work.

*Held,* that the defendant was not thereby released from his liability upon his subscription.

*Held,* further, that he was not so released by reason of the fact that the road and the franchises of the company had been sold upon the foreclosure of a mortgage given by the company.

APPEAL from a judgment in favor of the plaintiff, entered on the decision of a justice of this court, upon a trial had at the Erie Circuit, without a jury.

The action was brought to recover the amount of certain assessments upon shares of the capital stock of the plaintiff, alleged to be held by the defendant.

*H. O. Lakin,* attorney, for the appellant; *R. P. Marvin,* of counsel.

*Bass, Cleveland & Bissell,* for the respondent.

SMITH, J.:

The principal question in the case is whether the defendant made such a subscription for stock as constituted him a stockholder in the plaintiff corporation, and liable to be assessed. The plaintiff was organized as a railroad corporation, under the provisions of the statute of 1850, known as the general railroad act. (L. 1850, ch. 140.) The date of its organization was March 23, 1872. A few days prior to the organization of the company, the defendant, with several other persons, signed an agreement in writing, by which the several subscribers thereto agreed to take and pay for the number of shares of the capital stock of said company, of $100 each, set opposite their respective names. The agreement was in the following words: "We, the undersigned, in consideration of, and for the purpose of becoming stockholders in the Buffalo and Jamestown Railroad Company, do hereby subscribe and take the number of shares of one hundred dollars each share, of the capital stock of said company, set opposite our respective names, and agree to pay therefor in such time or manner as required by said company." The defendant set opposite his name ten shares. The trial judge found that the plaintiff, after its organization, accepted the subscription of the defendant, made as aforesaid, as and for a

subscription to its capital stock, and the defendant was required by it to pay, and did pay accordingly, to the directors thereof ten per cent. on the amount so subscribed by him, as aforesaid, in money. Upon the facts and findings above stated, the defendant was held liable.

The contention on the part of the defendant is, that he is not liable, inasmuch as his subscription was not made in either of the modes pointed out by the act of 1850, that is to say, by signing the articles of association that were filed with the Secretary of State, or by subscribing in the books opened by the directors after the company was organized. We do not think the position is sound. According to the provisions of section 1 of the act of 1850, the persons who have subscribed the articles of association filed, and all persons who shall *become stockholders*, shall compose the corporation. No particular mode of becoming a stockholder is pointed out in section 1. Section 4 provides that subscription books may be opened by the directors, for the purpose of receiving subscriptions, but there is no language in any part of the act indicating that such mode of subscription is intended to be exclusive. It is not provided that a subscription shall be void unless made in such books. The payment of ten per cent. undoubtedly is a prerequisite to a valid subscription, the language of the statute being that " no subscription shall be received or taken without such payment." If it had been provided that no subscription should be received unless made in the books opened by the directors, there would have been some warrant for the defendant's position, but that the legislature has not said, and the courts cannot interpolate it by construction. The appellant's counsel argues that the whole proceeding is statutory, and that, in order to be valid, it must be had in the way pointed out in the statute. That, we conceive, is true in part only. The statute is the grant of power to create the corporation, and in creating it the statute must be followed strictly; but the corporation being formed, the taking of shares of its capital stock is a matter regulated by the general law of contracts, except so far as the statute has provided otherwise, expressly or by necessary implication. Doubtless it would be convenient and useful to have all subscriptions entered in a book under the charge of the directors, for many

purposes connected with the affairs of the corporation, such as the distribution of stock, making assessments thereon, and enforcing the individual liability of stockholders; and probably considerations of this nature led to the provisions of section 4, referred to; but as between a subscriber and the corporation, it is not essential that his subscription, otherwise valid, should be made in such book. We think it would be putting a forced and unwarranted construction upon the language of section 4, to hold, in the absence of negative or restrictive words, that it was intended to confine the making of a valid subscription for stock to the mode there pointed out.

This conclusion does not conflict with any adjudication to which our attention has been called. The learned counsel for the appellant cited and relied upon the cases of *Erie & N. Y. City R. R. Co.* v. *Owen* (32 Barb., 616), and *Troy & Boston R. R. Co.* v. *Tibbitts* (18 Id., 297.) Those cases are not in point. In Owen's case, duplicate sets of articles of association, pursuant to the general railroad act of 1850, were circulated for subscription before the corporation was formed, one of which was subsequently filed in the office of the secretary of state, as required by the first section of the act, and the other was not filed. The defendant was sought to be made liable upon his subscription to the latter, and it was held that he was not liable. There was no question in the case as to the requisites of a valid subscription under section 4, after the corporation had been organized, and what was said on that subject, although entitled to the respect due to the opinion of a learned and experienced judge, was *obiter dictum.* Nor is there any analogy between the two cases, so far as the particular question under consideration is concerned. In Owen's case there was no room for construction, the language of the first section, under which alone the case was decided, being explicit, that "the persons who have so subscribed such articles of association," that is, the articles filed with and indorsed and recorded by the secretary of state, " and all persons who shall become stockholders in such company, shall be a corporation," &c. The defendant, not having signed the articles *filed*; and not having become a stockholder by means of anything done before or after the corporation had an existence, was properly

held not to be a member of the corporation. The case of Tibbitts, which was cited in Owen's case, arose under the general railroad act of 1848. Tibbitts was sought to be made liable as a stockholder in a corporation formed under that act, by reason of his having subscribed a preliminary paper, previous to the organization of the company, by which he agreed to take the amount in capital stock, placed opposite his name, without subsequently affixing his signature to the articles of association, or subscribing to the capital stock in the books opened by the directors or elsewhere. The act of 1848 contained substantially the same provisions as that of 1850, in respect to what persons should constitute the corporation, and as to the manner of subscribing for stock after the corporation was formed. It was held that the preliminary subscription was a mere provisional act, and had no legal vitality standing alone, and that the defendant was not liable. In that case, also, the question as to what was necessary to constitute a person a stockholder after the formation of the company did not arise. In neither of those cases was there any evidence of an acceptance by the corporation or of a ratification by the defendant of his subscription after the corporation was created. Mr. Justice WRIGHT, who delivered the opinion in the Tibbitts case, adverted to that circumstance as distinguishing the case from that of *Hamilton & Deansville Plank Road Co.* v. *Rice* (7 Barb., 157), where the defendant followed up his subscription, made before the company was created, by an acceptance of a certificate for the stock, and on that ground was held to be a member of the corporation. The cases cited by the appellant's counsel are inapplicable to the present case.

Assuming that the defendant's agreement was not invalid because it was made in a book other than those opened by the directors, the question arises whether it was void for the reason that it was made before the corporation came into existence. There must be a promisee as well as a promisor to constitute a valid contract. As respects this point, the plaintiff's case, in our opinion, steers clear of any difficulty, if, in fact, the defendant's subscription was accepted by the corporation after its organization, and was subsequently ratified by the defendant by his paying assessments thereon of ten per cent. In that case, the subscription may be regarded as

having taken effect at the time of such acceptance and payment, and so as having been made after the corporation was formed. It has been held frequently that an agreement to take stock in a corporation to be thereafter formed becomes binding on the organization of the corporation, and its acceptance of the agreement (*Stanton* v. *Wilson*, 2 Hill, 153 ; *Hamilton & Deansville Plank Road Co.* v. *Rice, supra ; Reformed Protestant Dutch Church* v. *Brown*, 29 Barb., 335 ; *Buffalo & New York City R. R. Co.* v. *Dudley*, 14 N. Y., 336 ; *Buffalo & Pittsburgh R. R. Co.* v. *Hatch,* 20 Id., 157.)

The defendant's counsel challenges the finding that the subscription was accepted by the company, and claims that there is no evidence that the memorandum book in which the subscription was made came to the possession of the company, until after the defendant refused to pay further assessments. The evidence is, that after the subscriptions were made, the book went into the hands of Mr. Allen, who was one of the persons who solicited subscriptions, and who was one of the first board of directors chosen by the company ; that after the company was organized Allen transferred the book to the cashier of the Jamestown Bank, who thereafter collected assessments of the persons whose names were subscribed in it, and delivered to the persons so paying, receipts signed by the secretary of the company, for such moneys, the cashier having been authorized by the secretary to do so ; that the cashier transmitted to the secretary lists of the persons paying and the moneys paid by them, and the secretary copied the names into the stock ledger and cash book kept by him ; and that after the defendant refused to pay his assessments, the book in which he made his subscription was handed to the president of the company. It appears to have been produced by the plaintiff at the trial. It was also shown that the defendant paid to the cashier several calls upon his stock, amounting in all to four hundred dollars, and received from him receipts signed by the secretary of the company, specifying the amount paid and its percentage upon his stock, corresponding to the number of shares specified in his subscription. There was enough proved, we think, to warrant the finding that the company accepted the defendant's subscription. There was

sufficient proof of a delivery. It was enough for that purpose, that the defendant allowed the person who procured his subscription to take the book away with him ; that the company was informed of its contents, and assumed to make assessments upon the stock so subscribed for by him, and that he acquiesced in and paid the assessments. We are of the opinion that the defendant's subscription, having been accepted by the corporation, and subsequently ratified by him by the payment of ten per cent. thereof and over, was a valid subscription, and thereby he became a stockholder.

Another question requiring a statement of our views is, whether the defendant is released from his liability by the fact that the corporation has abandoned the construction of a part of its road. The articles of association contemplated a road from the city of Buffalo, through the counties of Erie, Cattaraugus and Chautauqua, to a point in the southerly boundary of the latter county, on the line between the States of New York and Pennsylvania. The road has been built and is in operation from Buffalo to the village of Jamestown, in the county of Chautauqua, but from that point to the State line, a distance of from eleven to fourteen miles, the court found that its construction has been abandoned. It does not appear that the abandonment was effected by a resolution of the board of directors, or by an alteration of the articles of association, or that it was anything more than a mere cessation or suspension of the work of construction, which may be resumed at any time. The completion of the road was not a condition precedent to the defendant's liability to pay for his stock. By the terms of his subscription, he was to pay when required by the company. The subscriptions were obtained for the purpose of providing the company with means to construct their road, and for aught that appears, the refusal of the defendant and others to pay their assessments may have compelled the suspension of the work. There is still power, under the articles of association, to complete the road. The sale of the road under foreclosure does not interfere to prevent its completion, as all the property, rights, privileges and franchises of the original company covered by the mortgage, passed to the purchaser and to the new corporation formed by them and their associates. (L. 1854, ch. 282, § 1; L. 1857, ch. 444, § 1.) The cases cited by the ap-

pellant's counsel of a change and extension of route (*Macedon & Bristol Plank Road Co.* v. *Lapham,* 18 Barb., 312), or an alteration of charter superadding a new and different business to that originally contemplated (*Hartford & New Haven R. R. Co.* v. *Croswell,* 5 Hill, 383), are not in point. In those cases there was an attempt to bind the stockholder to an enterprise not covered by his contract. Here, the original undertaking has not been exceeded; the only complaint is that a comparatively small part of it is unperformed, and for aught that appears, nothing stands in the way of its full completion whenever the original corporation or its successor shall be in the receipt of sufficient funds for the purpose.

It is also contended in behalf of the appellant that, by reason of the foreclosure sale, the consideration on which his contract rested has entirely failed, and he is, therefore, released. As a consideration for his subscription, he acquired all the rights of a shareholder and enjoyed them, so long as the corporation continued to operate the road. His rights were the same, in proportion to the amount of his stock, as were the rights of others who paid in full, and it is but just that he should contribute, as fully as they did, to the payment of the debts and expenses of the corporation.

The judgment should be affirmed.

The like order should be made in the cases of the same plaintiff against Erie L. Hall and Horace H. Gifford, respectively.

TALCOTT, P. J. and HARDIN, J., concurred.

Judgment affirmed in each case.