NEW LINDELL HOTEL COMPANY, Appellant, *v.* IRWIN Z. SMITH, Respondent.

November 28, 1882.

1. SUBSCRIPTIONS.—Persons making bonus subscriptions to a corporation not in being at the time, are liable for the payment of such subscriptions when the corporation is formed, and the work for the doing of which the corporation is formed is begun.

2. CONSIDERATION.— The mutual promises of the subscribers form the consideration for such a contract, and it is immaterial that the subscriptions were made payable to a third person.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Reversed and remanded.*

R. A. CAMPBELL and H. NEUHOFF, for the appellant.

G. M. STEWART and J. L. TORREY, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

Defendant Smith died since the appeal in this cause, and it has been revived in the name of his executor, Joseph W. Branch.

The allegations of the petition are substantially as follows : —

Prior to December 8, 1871, defendant and others, property-holders, merchants, and citizens of St. Louis, interested in the erection of a first-class hotel in that city, solicited Mrs. Ames, who then owned a large part of block 125 in St. Louis, to build a first-class hotel on part of that block, and as an inducement, offered to her a donation of not less than $150,000, to build the same, if such amount could be raised by subscription.

At that time, the owners of property in block 125, and other persons interested, were forming an incorporated company to build the hotel. In consideration of the premises, and of the benefits to accrue from building the hotel, defendants and others interested in building the hotel, as parties of the first part, and the New Lindell Hotel Company, then being formed and then represented by Mrs. Ames, as "parties of the second part," by an agreement in writing filed with the petition, signed by defendant, and other subscribers to that instrument as parties of the first part, stipulated and agreed, each with the other, and with said parties of the second part, to subscribe and pay to said corporation as a free donation, the amounts set opposite their names, and by them subscribed in the following manner : One-tenth, when $50,000 should have been expended ; one-tenth, when $100,000 should have been expended, and an additional tenth, whenever the additional sum of $50,000 should have been expended, the last instalment to be paid when $500,000 should have been expended, or when the hotel should be completed.

It was stipulated by defendant and his co-subscribers,

parties of the first part, that they did thereby appoint one Barrett, now dead, as their agent to represent them and execute said agreement with said parties of the second part, and that the expenditure of the moneys before referred to, by said corporation, should be evidenced only by the written certificate of Barrett, who, by the terms of the instrument, was required to furnish said corporation such certificate for each and all of said expenditures, when they should have been respectively made, and for such purpose, Barrett was to have access to the books and other evidences of the expenditures of the company in erecting the building.

It was stipulated in the written instrument that each subscriber was liable to pay only the amount by him subscribed, and that the agreement was to be void if the building was not begun before July 1, 1872. It was further agreed by Mrs. Ames, representing said corporation so to be formed, that, when the total amount of *bona fide* subscriptions should reach $150,000, said corporation would build a first-class hotel, of certain dimensions set out in full, that the same should be completed without delay, and that Mrs. Ames would procure the organization of said corporation under the laws of Missouri, and convey to it the unencumbered fee of the ground on which the building was to be erected.

In pursuance of the terms of the agreement, $150,000 having been subscribed, Mrs. Ames and others interested caused the New Lindell Hotel Company, the plaintiff herein, to be organized, and Mrs. Ames conveyed, on June 29, 1872, the ground to the corporation, which proceeded to erect the building according to the terms, and completed it in September, 1874.

There was paid out in the erection of the building by plaintiff, more than $500,000, and Barrett, as agent of defendant and his co-subscribers, gave to plaintiff his certificates in writing from time to time, stating in each of said certificates that the sum of $50,000 had been spent in the erection, and that plaintiff was thereby entitled to collect

and receive of each of the subscribers an instalment of ten per cent of the amount subscribed by each subscriber ; and, from time to time, as plaintiff spent $50,000 in the erection, Barrett gave plaintiff his certificate, stating the fact of such additional expenditures, and that plaintiff was entitled to collect of the subscribers further instalments of ten per cent. Barrett gave ten certificates of like tenor, the last of which certified the completion of the building, and that the plaintiff was entitled to collect of the subscribers their entire subscription, and was dated September 23, 1874.

The petition then alleges the entire fulfilment of the agreement by plaintiff, and that defendant subscribed to said instrument for the purposes and on the conditions therein set out, $2,000, the whole of which has become due from plaintiff to defendant. The first eight instalments have been paid, and the last two, amounting to $400, are due and unpaid since September 25, 1874, and have been demanded.

Plaintiff asks judgment for $400, and interest from date last named.

Defendant demurred to the petition on the grounds that it does not set forth sufficient facts to constitute a cause of action ; that it does not appear that plaintiff has any valid title or interest in the subject-matter of the action ; that the contract is not binding on defendant; that no consideration for the promise is set out.

The demurrer was sustained.

It has been repeatedly held in this country that the mere fact that the corporation had not come into existence when the agreement was signed, is not an insuperable objection to a recovery of the subscription by the corporation, in cases such as the one before us.

*The Trustees of Farmington Academy* v. *Allen* ( 14 Mass. 172 ) was a case in which the defendant and others subscribed a paper each engaging to pay a certain sum of money for raising a fund to establish an academy in defendant's neighborhood. Trustees were afterwards incorporated ; the

defendant, when applied to to pay his subscription, furnished some materials towards the building, and he was held liable for the rest of it, on the ground of money laid out by them for his use.    The action was by the corporation, which was not *in esse* when the promise was made.    Chief Justice Parker, who delivers the opinion, says that the action cannot be supported upon the original promise of which the subscription paper is evidence, because a promise of this sort made to no particular person, and having only a public benefit for its consideration, is not binding in law ; but as defendant was an inhabitant of the town, and knew of the erection of the building, and actually advanced some part of the materials, this was sufficient to justify the trustees in proceeding to incur expense on the faith of defendant's subscription, and, having done so, they have expended the amount of his subscription for him on his implied request.

In the present case it is alleged that Smith paid the greater part of his subscription during the building of the hotel, and after the company was incorporated.    He would, therefore, be liable to the corporation, on the doctrine of the Massachusetts case.

In New York it is held that it is no objection to the validity of subscription to the capital stock of a plank-road company, or to the right of the company subsequently organized to maintain an action upon it, that, at the time it was made, there was no company in existence.    *Hamilton, etc., P.-R. Co.* v. *Rice,* 7 Barb. 157.

*Stanton* v. *Albany Exchange Bank* (2 Hill, 153) was a case of subscription to bank stock.    The articles declared that the association should begin on the first of January, and that the defendant and the other subscribers had associated according to the general banking law ; and the subscribers agreed to pay to the directors the sums they might be required, from time to time, to pay on their subscriptions.    The company did not come into existence till several months after the date of the subscription paper.

But it was held that, in legal effect, the subscription must be held to have been made on the day of the incorporation of the company.

*Shober's Administrators* v. *Lancaster County Park Association* (68 Pa. St. 429) was a case of subscription " for the purpose of purchasing a tract of land, part of the Barry Farm, and for such other purpose as we, the subscribers, may agree upon. It is proposed to get an act of incorporation. * * * The money to be expended in purchasing the land, putting up the fences and buildings, and the ground in order." The subscribers met, appointed a committee to buy the land, get a charter, call in subscriptions, etc. They did buy the land, get their charter, and obtain a deed to the corporation. An original subscriber, who had taken no part in the proceedings, refused to pay his subscription ; but it was held that he was liable, at the suit of the corporation. It was held that the corporation, when organized, became the legal trustee of the funds subscribed, and the proper person to call in the subscriptions, if they were not revoked before the organization of the company by incorporation.

In *Edinboro Academy* v. *Robinson* (37 Pa. St. 210), it was held that the subscribers to a fund for the erection of an academy became an association of persons, united for contributing to a common fund for a common purpose, as soon as the stipulated amount of money has been subscribed ; which act of association involves an agreement to organize for the purpose contemplated ; that each subscription is a contract by each associate, with his fellows, in consideration of similar contracts by them, to contribute to the common fund the amount subscribed ; that the first duty of such an association is to organize, which, when completed, raises the duty on the part of each subscriber to pay the sum he subscribed ; that incorporation is the most perfect form of organization, and when that is accomplished, the corporation must be regarded as the proper legal party to enforce

their payment, and the action is well brought in the name of the subsequently formed corporation.

And in Illinois it is held ( *Griswold* v. *Board of Trustees of Peoria University,* 26 Ill. 41 ), that a subscription enures to the benefit of a corporation, though thereafter created ; and that, where a corporation, in existence or in contemplation, expends money on the strength of subscriptions made in its aid, the subscribers will be liable in an action for money paid, laid out, and expended.

We consider it to be settled that a subscription such as the one set out in the petition under consideration, enures to the benefit of the corporation thereafter created.

Respondent strongly insists that there must be two parties to a contract, and that the rights which it creates cannot be transferred by one of them to a third person not in a condition to be bound by it at the time it was made ; that the new corporation when created was a new creature having no rights or obligations by reason of anything done before it existed, and that there can be no such thing as an inchoate liability to become binding on a proposed company when created, without a violation of the elementary principles of the law of contracts. But, if this be so, it would be none the less true that the petition under consideration sets forth facts which show a liability of Smith to this corporation, which, on the faith of his recognition of his promise, shown by his paying subscriptions in accordance with it, after the organization of the company, and when he knew that the work was going on, paid out money on the building at his request.

The English case of *Kehner* v. *Baxter* (L. R. 2 C. P. 173), to which respondent calls our attention, does not seem to decide anything in conflict with the American cases that we have cited. There, the plaintiff agreed to sell to A., B., C., the defendants, on behalf of the Royal Gravesend Hotel Company, his stock of wines, hotel furniture, etc. Defend-

ants accepted " on behalf of the Royal Gravesend Hotel Company," and agreed to pay, on February 28th next, and received the goods which were consumed in the business. The proposed company obtained a charter of incorporation on February 20th, but collapsed before the money was paid. It was held, that oral evidence was not competent to show that A., B., and C. intended no personal liability ; that they were personally liable on their agreement, as for goods sold and delivered, and that subsequent ratification by the company would not relieve them without plaintiff's consent. The defendants could not be agents of a non-existing company, and if the agreement did not bind defendants it bound no one.    One who contracts as agent and has no existing principal, becomes individually liable, on well-established principles of agency.

But, were the English rule otherwise, we should follow the American rule, that a subscription to stock, as in the case at bar, enures to the benefit of the corporation thereafter created, the object being to compel the promissor to pay what in conscience he ought not to refuse, and to prevent a failure of justice.

So far as the question of consideration goes, the general rule is, that mere promises of gifts, even to public uses, made without consideration, cannot be enforced as contracts.    But it is also a rule in cases of simple contract, that, if one person makes a promise to another, for the benefit of a third, the third may maintain an action upon it, though the consideration does not move from him.    The mutual promises of the several subscribers in this case, constitute a sufficient consideration, and, that the promise is to pay a third party, is not a tenable objection ; and the promise is binding, though the corporation to which the payment is to be made is not then *in esse*, but to be formed thereafter.    *Hamilton Plank-Road Co.* v. *Rice*, 7 Barb. 157, 165.

We think that the petition sets forth facts sufficient to constitute a cause of action against the defendant, and that the judgment should, therefore, be reversed and the cause remanded; and it is so ordered.    All the judges concur.